NORTH AMERICAN COLD STORAGE COMPANY, APPELLANT, *v.* CITY OF CHICAGO *et al.*

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 28. Argued November 13, 1908.—Decided December 7, 1908.

A municipal ordinance properly adopted under a power granted by the state legislature is to be regarded as an act of the State within the Fourteenth Amendment.

Where the Circuit Court has sustained the demurrer to the complaint because the case does not involve the construction or application of the Constitution of the United States and has given a certificate to

that effect, and complainant has also appealed directly to this court under § 5 of the act of March 3, 1891, c. 517, 26 Stat. 826, if this court finds that jurisdiction exists, the appeal can be heard without resort to the certificate and decided on the merits. *Giles* v. *Harris,* 189 U. S. 475.

Under its police power the State has the right to seize and destroy food which is unwholesome and unfit to use, and, in exercising such a power, due process of law, within the meaning of the Fourteenth Amendment, does not require previous notice and opportunity to be heard; the party whose property is destroyed has a right of action after the act which is not affected by the *ex parte* condemnation of the state officers.

Where, under the police power of the State, the legislature may enact laws for the destruction of articles prejudicial to public health, it is, to a great extent, within its discretion as to whether any notice and hearing shall be given; and the fact that the articles might be kept for a period does not give the owners a right to notice and hearing.

The right of the State under the police power to destroy food that is unfit for human consumption is not taken away because some value may remain in it for other purposes, when it is kept to be sold at some time as food. *Reduction Company* v. *Sanitary Works,* 199 U. S. 306; *Gardner* v. *Michigan,* 199 U. S. 325.

The provisions in the cold storage ordinances of Chicago for destruction of unsafe and unwholesome food, are not unconstitutional as depriving persons of property without due process of law because they do not provide for notice and opportunity to be heard before such destruction, or because the food destroyed might have some value for other purposes than food.

THE bill of complaint in this case was dismissed by the Circuit Court for want of jurisdiction, and a certificate of the Circuit Judge was given that the jurisdiction of the court was in issue, and the question of jurisdiction alone was certified to this court, under paragraph 2 of § 5 of the act of March 3, 1891 (26 Stat. 826, chap. 517). The appellant also appealed, and now asserts its right of appeal under paragraph five of the same section of the above act, on the ground that the case involves the construction or application of the Constitution of the United States, and hence may be brought directly to this court from the decision of the Circuit Court.

The bill was filed against the city of Chicago and the various individual defendants in their official capacities—Commissioner of Health of the city of Chicago, Secretary of the Department of Health, Chief Food Inspector of the Department of Health and inspectors of that department, and policemen of the city—for the purpose of obtaining an injunction under the circumstances set forth in the bill. It was therein alleged that the complainant was a cold storage company, having a cold storage plant in the city of Chicago; and that it received, for the purpose of keeping in cold storage, food products and goods as bailee for hire; that on an average it received $20,000 worth of goods per day, and returned a like amount to its customers, daily, and that it had on an average in storage about two million dollars' worth of goods; that it received some forty-seven barrels of poultry on or about October 2, 1906, from a wholesale dealer in due course of business, to be kept by it and returned to such dealer on demand; that the poultry was, when received, in good condition and wholesome for human food, and had been so maintained by it in cold storage from that time, and it would remain so, if undisturbed, for three months; that on October 2, 1906, the individual defendants appeared at complainant's place of business and demanded of it that it forthwith deliver the forty-seven barrels of poultry for the purpose of being by them destroyed, the defendants alleging that the poultry had become putrid, decayed, poisonous or infected in such a manner as to render it unsafe or unwholesome for human food. The demand was made under § 1161 of the Revised Municipal Code of the city of Chicago for 1905, which reads as follows:

"Every person being the owner, lessee or occupant of any room, stall, freight house, cold storage house or other place, other than a private dwelling, where any meat, fish, poultry, game, vegetables, fruit, or other perishable article adapted or designed to be used for human food, shall be stored or kept, whether temporarily or otherwise, and every person having charge of, or being interested or engaged, whether as principal

or agent, in the care of or in respect to the custody or sale of any such article of food supply, shall put, preserve and keep such article of food supply in a clean and wholesome condition, and shall not allow the same, nor any part thereof, to become putrid, decayed, poisoned, infected, or in any other manner rendered or made unsafe or unwholesome for human food; and it shall be the duty of the meat and food inspectors and other duly authorized employés of the health department of the city to enter any and all such premises above specified at any time of any day, and to forthwith *seize*, condemn and destroy any such putrid, decayed, poisoned and infected food, which any such inspector may find in and upon said premises."

The complainant refused to deliver up the poultry, on the ground that the section above quoted of the Municipal Code of Chicago, in so far as it allows the city or its agents to seize, condemn or destroy food or other food products, was in conflict with that portion of the Fourteenth Amendment which provides that no State shall deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

After the refusal of the complainant to deliver the poultry the defendants stated that they would not permit the complainant's business to be further conducted until it complied with the demand of the defendants and delivered up the poultry, nor would they permit any more goods to be received into the warehouse or taken from the same, and that they would arrest and imprison any person who attempted to do so, until complainant complied with their demand and delivered up the poultry. Since that time the complainant's business has been stopped and the complainant has been unable to deliver any goods from its plant or receive the same.

The bill averred that the attempt to seize, condemn and destroy the poultry, without a judicial determination of the fact that the same was putrid, decayed, poisonous or infected, was illegal, and it asked that the defendants, and each of them, might be enjoined from taking or removing the poultry from

the warehouse, or from destroying the same, and that they also be enjoined from preventing complainant delivering its goods and receiving from its customers in due course of business the goods committed to its care for storage.

In an amendment to the bill the complainant further stated that the defendants are now threatening to summarily destroy, from time to time, pursuant to the provisions of the above-mentioned section, any and all food products which may be deemed by them, or either of them, as being putrid, decayed, poisonous or infected in such manner as to be unfit for human food, without any judicial determination of the fact that such food products are in such condition.

The defendants demurred to the bill on the ground, among others, that the court had no jurisdiction of the action. The injunction was not issued, but upon argument of the case upon the demurrer the bill was dismissed by the Circuit Court for want of jurisdiction, as already stated.

*Mr. L. A. Stebbins*, with whom *Mr. W. H. Sears* was on the brief, for appellant:

If the trial court misconstrued the true definition of the word jurisdiction and therefore erred in dismissing the case for want of jurisdiction, then the case is still appealable direct to this court under par. 6 of § 5 of the Judiciary Act of March 3, 1891, c. 517, 26 Stat. 826. In this event the certificate of the trial court becomes surplusage, and this court will consider the case upon its merits. *Giles* v. *Harris*, 189 U. S. 475.

That notice, and an opportunity to be heard, shall precede the taking of life, liberty or property is a principle absolutely fundamental in every system of constitutional government. *Rex* v. *Cambridge Univ.*, 1 Stra. 558, 565; *Bradstreet* v. *Neptune Ins. Co.*, 3 Sumn. (U. S.) 600.

The police power of the several States is subject to constitutional limitations. *Mugler* v. *Kansas*, 123 U. S. 623; *Booth* v. *People*, 186 Illinois, 43; McGehee on Due Process,

305; *Central of Ga. R. R. Co.* v. *Murphy,* 196 U. S. 194; *Reid* v. *Colorado,* 187 U. S. 137; *Lake Shore & Michigan Southern Ry. Co.* v. *Smith,* 173 U. S. 684; *Dobbins* v. *Los Angeles,* 195 U. S. 223.

Section 1161 of the Revised Municipal Code of the city of Chicago denies due process of law, in that it authorizes the destruction of property without any provision whatever for notice to the owner thereof, or to the bailee holding the same in cold storage, and without any opportunity whatsoever for any hearing, of any kind or character, before any person or official upon the question whether the said property is, in fact, dangerous to the public health. *Dartmouth College* v. *Woodward,* 4 Wheat. 518; *Pennoyer* v. *Neff,* 95 U. S. 714; McGeehee on Due Process of Law, 58, 73; *Galpin* v. *Page,* 18 Wall. 350; *King* v. *Hayes,* 80 Maine, 206; *Edson* v. *Crangle,* 62 Ohio St. 49; *Varden* v. *Mount,* 78 Kentucky, 86; *Jeck* v. *Anderson,* 57 California, 251; *Lowry* v. *Rainwater,* 70 Missouri, 152; *Weil* v. *Ricord,* 24 N. J. Eq. 169; *Hutton* v. *Camden,* 39 N. J. L. 122, 132.

There was no emergency calling for the immediate destruction of the property here in question, because the property could have remained in the cold storage warehouse in an unchanged condition until a hearing could have been had, after due notice. The court should take judicial notice of the nature and purpose of cold storage warehouses, as bearing on the alleged necessity for the destruction of the poultry involved in this proceeding.

The remedy suggested in the case of *Lawton* v. *Steele,* 152 U. S. 133, could not be applied in a case like the present, because by the destruction of the property all possible evidence of its character would be destroyed with it, and it would be impossible for the aggrieved owners to prove the wholesome character of their goods, and a suit against the offending officers would therefore be without success.

As decayed food products are still valuable for certain purposes, other than as food, there can be no justification for their

destruction; they are entitled to the same protection under the Constitution as other property.

*Mr. Emil C. Wetten,* with whom *Mr. George W. Miller* and *Mr. Edward J. Brundage* were on the brief, for appellees:

It is impossible to frame any definition of police power by absolutely indicating definite limits to its exercise, but each case which arises must be decided in accordance with the merits of the particular case. For the general principles governing the question see 22 Am. & Eng. Ency. of Law, 2d ed., 915; *Beer Co.* v. *Massachusetts,* 97 U. S. 25, 33; *Leisy* v. *Hardin,* 135 U. S. 100, 128; Parker & Worthington's Public Health & Safety, 2; Brannon on Fourteenth Amendment, 167, 175; *Barbier* v. *Connolly,* 113 U. S. 27, 31; *Mugler* v. *Kansas,* 123 U. S. 623, 664, 665; *Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659, 667; *In re Rahrer,* 140 U. S. 545, 554; *Powell* v. *Pennsylvania,* 127 U. S. 678, 683; *Patterson* v. *Kentucky,* 97 U. S. 501, 504.

The ordinance is a valid and proper exercise of police power. *Mugler* v. *Kansas,* 123 U. S. 623, 661, 669; *Lawton* v. *Steele,* 152 U. S. 133, 136; Parker & Worthington, 6; *Powell* v. *Pennsylvania,* 127 U. S. 678, 684; *In re Jacobs,* 98 N. Y. 98, 115; *Jacobson* v. *Massachusetts,* 197 U. S. 11, 27, 30; *Gardner* v. *Michigan,* 199 U. S. 325, 332; *City of Chicago* v. *Netcher,* 183 Illinois, 104, 111.

Under the police power the summary destruction of unwholesome food products is a proper exercise of official discretion. Freund, Police Power, §§ 520, 521; *Powell* v. *Pennsylvania,* 127 U. S. 678, 685; *People* v. *Durston,* 119 N. Y. 569, 578; *Compagnie Francaise &c.* v. *Board of Health,* 186 U. S. 380, 392.

A notice and hearing before the summary abatement of a nuisance is not necessary. McGeehee on Due Process, 372; *People* v. *Board of Health,* 140 N. Y. 1; *S. C.,* 23 L. R. A. 481; Parker & Worthington, § 175; *Salem* v. *Eastern R. R. Co.,* 98 Massachusetts. 431, 443; *Miller* v. *Horton et al.,* 152 Massachusetts,

540, 543; *Stone* v. *Heath,* 179 Massachusetts, 385, 386; *Health Department* v. *Rector,* 145 N. Y. 32; *Lowe* v. *Conroy,* 120 Wisconsin, 151, 155, 156; *Daniels* v. *Homer,* 139 N. C. 219; *Blue* v. *Beach,* 80 Am. St. Rep. 212, 218; *Egan* v. *Health Department,* 20 Misc. 38; *S. C.,* 45 N. Y. Supp. 325; *Pearson et al.* v. *Zehr,* 138 Illinois, 40, 51; *State* v. *Main,* 69 Connecticut, 123, 136, 138; *Gaines* v. *Waters,* 64 Arkansas, 609, 612; *Booth* v. *People,* 186 Illinois, 43, 48.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

In this case the ordinance in question is to be regarded as in effect a statute of the State, adopted under a power granted it by the state legislature, and hence it is an act of the State within the Fourteenth Amendment. *New Orleans* v. *Sugar Co.,* 125 U. S. 18, 31.

The Circuit Court held that the defendants being sued in their official capacities could not be held for acts or threats which they had no power or authority under the ordinance to make or perform; that, although it was alleged that the defendants acted under the provisions of the section of the code already quoted, yet that under no possible construction of that ordinance could the defendants claim the right to the entire stoppage of the business of the complainant in storing admittedly wholesome articles of food, so that it would seem that these acts were mere trespasses, and plainly without the sanction of the ordinance; as to these acts, therefore, the remedy was to be pursued in the state courts, there being no constitutional question involved necessary to give the court jurisdiction.

The court further held that the allegation that the intention to seize and destroy the poultry without any judicial determination as to the fact of its being unfit for food was in violation of the Fourteenth Amendment, could not be sustained; that such Amendment did not impair the police power of the

State, and that the ordinance was valid and not in violation of that Amendment. The demurrer was therefore sustained and the bill dismissed, as stated by the court, for want of jurisdiction.

We think there was jurisdiction and that it was error for the court to dismiss the bill on that ground. The court seems to have proceeded upon the theory that, as the complainant's assertion of jurisdiction was based upon an alleged Federal question which was not well founded, there was no jurisdiction. In this we think that the court erred. The bill contained a plain averment that the ordinance in question violated the Fourteenth Amendment, because it provided for no notice to the complainant or opportunity for a hearing before the seizure and destruction of the food. A constitutional question was thus presented to the court, over which it had jurisdiction, and it was bound to decide the same on its merits. If a question of jurisdiction alone were involved, the decree of dismissal would have to be reversed. The complainant, however, has, in addition to procuring the certificate of the court as to the reason for its action, also appealed from the decree of dismissal directly to this court under the fifth paragraph of § 5 of the act of 1891. Such appeal can be heard without resort to the certificate and may be decided on its merits. *Giles* v. *Harris*, 189 U. S. 475, 486. A constitutional question being involved, an appeal may be taken directly to this court from the Circuit Court.

Holding there was jurisdiction in the court below, we come to the merits of the case. The action of the defendants, which is admitted by the demurrer, in refusing to permit the complainant to carry on its ordinary business until it delivered the poultry, would seem to have been arbitrary and wholly indefensible. Counsel for the complainant, however, for the purpose of obtaining a decision in regard to the constitutional question as to the right to seize and destroy property without a prior hearing, states that he will lay no stress here upon that portion of the bill which alleges the unlawful and forcible

taking possession of complainant's business by the defendants. He states in his brief as follows:

"There is but one question in this case, and that question is, Is section 1161 of the Revised Municipal Code of Chicago in conflict with the due process of law provision of the Fourteenth Amendment, in this, that it does not provide for notice and an opportunity to be heard before the destruction of the food products therein referred to? If there is no such conflict the ordinance is valid for the purposes of Federal jurisdiction; the bill states no cause of action, and was properly dismissed, as there is no claim of any such diversity of citizenship as would confer jurisdiction upon the Federal court, and no such jurisdiction exists, except by reason of the claim, that such ordinance is in conflict with the Fourteenth Amendment."

The general power of the State to legislate upon the subject embraced in the above ordinance of the city of Chicago, counsel does not deny. See *Reduction Company* v. *Sanitary Works,* 199 U. S. 306, 318. Nor does he deny the right to seize and destroy unwholesome or putrid food, provided that notice and opportunity to be heard be given the owner or custodian of the property before it is destroyed. We are of opinion, however, that provision for a hearing before seizure and condemnation and destruction of food which is unwholesome and unfit for use, is not necessary. The right to so seize is based upon the right and duty of the State to protect and guard, as far as possible, the lives and health of its inhabitants, and that it is proper to provide that food which is unfit for human consumption should be summarily seized and destroyed to prevent the danger which would arise from eating it. The right to so seize and destroy is, of course, based upon the fact that the food is not fit to be eaten. Food that is in such a condition, if kept for sale or in danger of being sold, is in itself a nuisance, and a nuisance of the most dangerous kind, involving, as it does, the health, if not the lives, of persons who may eat it. A determination on the part of the seizing officers that food is in an unfit condition to be eaten is not a decision which con-

cludes the owner. The *ex parte* finding of the health officers as to the fact is not in any way binding upon those who own or claim the right to sell the food. If a party cannot get his hearing in advance of the seizure and destruction he has the right to have it afterward, which right may be claimed upon the trial in an action brought for the destruction of his property, and in that action those who destroyed it can only successfully defend if the jury shall find the fact of unwholesomeness as claimed by them. The often cited case of *Lawton* v. *Steele*, 152 U. S. 133, substantially holds this. By the second section of an act of the legislature of the State of New York of 1880 it was provided that any "net . . . for capturing fish which was floated upon the water or found or maintained in any of the waters of the State," in violation of the statutes of the State for the protection of fish, was a public nuisance, and could be abated and summarily destroyed, and that no action for damages should lie or be maintained against any person for or on account of seizing or destroying such nets. Nets of the kind mentioned in that section were taken and destroyed by the defendant, and the owner commenced action against him to recover damages for such destruction. That portion of the section which provided that no action for damages should lie was applicable only to a case where the seizure or destruction had been of a nature amounting to a violation of the statute, and of course did not preclude an action against the person making a seizure if not made of a net which was illegally maintained. The seizure and destruction were justified by the defendant in the action, and such justification was allowed in the state courts (119 N. Y. 226) and in this court. Mr. Justice Brown, in delivering the opinion of this court, said:

"Nor is a person whose property is seized under the act in question without his legal remedy. If in fact his property has been used in violation of the act, he has no just reason to complain; if not, he may replevy his nets from the officer seizing them, or, if they have been destroyed, may have his action for their value. In such cases the burden would be upon the

defendant to prove a justification under the statute. As was said by the Supreme Court of New Jersey, in a similar case (*Am. Print Works v. Lawrence,* 21 N. J. Law, 248, 259): 'The party is not, in point of fact, deprived of a trial by jury. . . .' Indeed it is scarcely possible that any actual injustice could be done in the practical administration of the act."

The statute in the above case had not provided for any hearing of the question of violation of its provisions and this court held that the owner of the nets would not be bound by the determination of the officers who destroyed them, but might question the fact by an action in a judicial proceeding in a court of justice. The statute was held valid, although it did not provide for notice or hearing. And so in *People &c.* v. *Board of Health,* 140 N. Y. 1, the question arose in a proceeding by certiorari, affirming the proceedings of the board of health of the city of Yonkers, by which certain dams upon the Nepperhan River were determined to be nuisances and ordered to be removed. The court held that the acts under which the dams were removed did not give a hearing in express terms nor could the right to a hearing be implied from any language used in them, but that they were valid without such provision, because they did not make the determination of the board of health final and conclusive on the owners of the premises wherein the nuisances were allowed to exist; that before such a final and conclusive determination could be made, resulting in the destruction of property, the imposition of penalties and criminal punishments, the parties proceeded against must have a hearing, not as a matter of favor, but as a matter of right, and the right to a hearing must be found in the acts; that if the decisions of these boards were final and conclusive, even after a hearing, the citizen would in many cases hold his property subject to the judgments of men holding ephemeral positions in municipal bodies and boards of health, frequently uneducated and generally unfitted to discharge grave judicial functions. It was said that boards of health under the acts referred to could not, as to any existing state of facts, by their

determination make that a nuisance which was not in fact a nuisance; that they had no jurisdiction to make any order or ordinance abating an alleged nuisance unless there were in fact a nuisance; that it was the actual existence of a nuisance which gave them jurisdiction to act. There being no provision for a hearing the acts were not void nevertheless, but the owner had the right to bring his action at common law against all the persons engaged in the abatement of the nuisance to recover his damages, and thus he would have due process of law; and if he could show that the alleged nuisance did not in fact exist he will recover judgment, notwithstanding the ordinance of the board of health under which the destruction took place.

The same principle has been decided by the Supreme Judicial Court of Massachusetts. The case of *The City of Salem* v. *Eastern R. Co.*, 98 Massachusetts, 431, was an action brought to recover moneys spent by the city to drain certain dams and ponds declared by the board of health to be a nuisance. The court held that in a suit to recover such expenses incurred in removing a nuisance, when prosecuted against a party on the ground that he caused the same, but who was not heard, and had no opportunity to be heard upon the questions before the board of health, such party is not concluded in the findings or adjudications of that board, and may contest all the facts upon which his liability is sought to be established.

*Miller* v. *Horton*, 152 Massachusetts, 540, is in principle like the case before us. It was an action brought for killing the plaintiff's horse. The defendants admitted the killing but justified the act under an order of the board of health, which declared that the horse had the glanders, and directed it to be killed. The court held that the decision of the board of health was not conclusive as to whether or not the horse was diseased, and said that: "Of course there cannot be a trial by jury before killing an animal supposed to have a contagious disease, and we assume that the legislature may authorize its destruction in such emergencies without a hearing beforehand.

But it does not follow that it can throw the loss upon the owner without a hearing. If he cannot be heard beforehand he may be heard afterward. The statute may provide for paying him in case it should appear that his property was not what the legislature had declared to be a nuisance and may give him his hearing in that way. If it does not do so, the statute may leave those who act under it to proceed at their peril, and the owner gets his hearing in an action against them."

And in *Stone* v. *Heath*, 179 Massachusetts, 385, the court held that under the statute it had no power to restrain the board of health from abating nuisances and from instituting proceedings against plaintiff on account of his failure to abate them, as provided for in the statute, because the board of health had adjudged that a nuisance existed and had ordered it to be abated by the plaintiff, yet still the question, "whether there was a nuisance, or whether, if there was, it was maintained by the one charged therewith might be litigated by such parties in proceedings instituted against them to recover the expenses of the abatement, or may be litigated by the parties whose property has been injured or destroyed in proceedings instituted by them to recover for such loss or damage, and may also be litigated by parties charged with causing or maintaining a nuisance in proceedings instituted against them for neglect or refusal to comply with the orders of the board of health directing them to abate the same." In that way they had a hearing and could recover or defend in case there was no nuisance.

See also *Lowe* v. *Conroy*, 120 Wisconsin, 151; *Pearson* v. *Zehr*, 138 Illinois, 48; *State* v. *Main*, 69 Connecticut, 123; *Gaines* v. *Waters*, 64 Arkansas, 609, 612, where the same principle is announced.

Complainant, however, contends that there was no emergency requiring speedy action for the destruction of the poultry in order to protect the public health from danger resulting from consumption of such poultry. It is said that the food was in cold storage, and that it would continue in the same con-

dition it then was for three months, if properly stored, and that therefore the defendants had ample time in which to give notice to complainant or the owner and have a hearing of the question as to the condition of the poultry, and as the ordinance provided for no hearing, it was void. But we think this is not required. The power of the legislature to enact laws in relation to the public health being conceded, as it must be, it is to a great extent within legislative discretion as to whether any hearing need be given before the destruction of unwholesome food which is unfit for human consumption. If a hearing were to be always necessary, even under the circumstances of this case, the question at once arises as to what is to be done with the food in the meantime. Is it to remain with the cold storage company, and if so under what security that it will not be removed? To be sure that it will not be removed during the time necessary for the hearing, which might frequently be indefinitely prolonged, some guard would probably have to be placed over the subject-matter of investigation, which would involve expense, and might not even then prove effectual. What is the emergency which would render a hearing unnecessary? We think when the question is one regarding the destruction of food which is not fit for human use the emergency must be one which would fairly appeal to the reasonable discretion of the legislature as to the necessity for a prior hearing, and in that case its decision would not be a subject for review by the courts. As the owner of the food or its custodian is amply protected against the party seizing the food, who must in a subsequent action against him show as a fact that it was within the statute, we think that due process of law is not denied the owner or custodian by the destruction of the food alleged to be unwholesome and unfit for human food without a preliminary hearing. The cases cited by the complainant do not run counter to those we have above referred to.

Even if it be a fact that some value may remain for certain purposes in food that is unfit for human consumption, the right to destroy it is not on that account taken away. The

small value that might remain in said food is a mere incident, and furnishes no defense to its destruction when it is plainly kept to be sold at some time as food. *Reduction Company* v. *Sanitary Works,* 199 U. S. 306–322; *Gardner* v. *Michigan,* 199 U. S. 325, 331.

The decree of the court below is modified by striking out the ground for dismissal of the bill as being for want of jurisdiction, and, as modified, is

*Affirmed.*

MR. JUSTICE BREWER dissents.