John V. Vaughn, J.
The defendant is charged with a violation of item 1 of regulation 5 of chapter XIV of the New York State Sanitary Code (10 NYCRR 14.10 [a]) and section 2 of article V of the Suffolk County Sanitary Code. The defendant operates a bakery and it is alleged that he maintained and operated a food service establishment in which the floors of all rooms in which food is stored, prepared or in which utensils are washed or stored, were not of such construction as to be easily cleaned, smooth, kept clean or in good repair. In May of 1969 an inspector for the Suffolk County Department of Health returned on several occasions. The defendant has moved for an order suppressing the use of evidence obtained as a result of the inspector’s activity alleging an illegal search.
The question presented upon this case is whether a health inspector may without a warrant enter upon premises which are open to the public, and make an inspection in order to determine whether those premises fulfill the .requirements of the Sanitary Code.
The defendant relies upon the case of People v. Laverne (14 N Y 2d 304). The court there held that searches by public officers of a person’s home without warrants for the purposes of criminal prosecutions were to that extent in violation of constitutional rights. The Láveme case itself turned upon an interpretation of Frank v. Maryland (359 U. S. 360 overruled, Camara v. Municipal Ct., 387 U. S. 523). There is in the Láveme case a difference of opinion in regard to the application of Frank v. Maryland (supra). The majority opinion in Láveme placed considerable weight upon the fact that the search involved evidence of criminal acts, and the search was of a private dwelling. However, Judge Burke dissented along with two other Judges. The dissent quotes from the decision in Frank v. Maryland (supra, p. 372) as follows (pp. 312-313): i < < Time and experience have forcefully taught that the power to inspect dwelling places, either as a matter of systematic area-by-area search or, as here, to treat a specific problem, is of indispensable importance to the maintenance of community health; a power that would be greatly hobbled by the blanket requirement of the safeguards necessary for a search of evidence of criminal acts. The need for preventive action is great, and city after city has seen this need and granted the power of inspection to its health officials * * * Certainly, the nature of our society has not vitiated the need for inspections first thought necessary 158 years ago, nor has experience revealed *672 any abuse or inroad on freedom in meeting this need by means that history and dominant public opinion have sanctioned. ’ ’ ’
Further on, the dissent quotes District of Columbia v. Little (178 F. 2d 13, affd. other grounds 339,.U. S. 1, 7-8) as follows: “ the duties which the inspector was- seeking to perform, under the authority of the * * * [village], were of such a reasonable, general, routine, accepted and important character, in the protection of the public health and safety, that they were being performed lawfully without such search warrant as is required by the Fourth Amendment to protect the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.”
It is apparent then that the dissenters disapprove of the distinction between searches which might result in civil sanctions and those which may result in criminal prosecution when social welfare type searches are made by building inspectors and the like. A search is good or bad when it is made, and its legality is not affected by subsequent occurrences. The penalties for violation of sanitary codes etc. cannot be determined at the time of a search and the legality of such searches should not be determined by the sanction subsequently sought to be enforced.
The Laverne case (supra) involved an investigation of private premises. The case at bar involves a bakery which is open to the -public.- Business premises may reasonably be inspected in many more situations than private homes. (See v. Seattle, 387 U. S. 541.) However, administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure (See v. Seattle, supra). The warr'ant procedure is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest. But reasonableness is still the standard. (Camara v. Municipal Ct., 387 U. S. 523.) If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant (Camara v. Municipal Ct., supra). Where considerations of health and safety are involved, the facts that would justify an inference of “probable cause ” to make an inspection are clearly different from those that would justify such an inference where a criminal investigation has been undertaken (Frank v. Maryland, supra). The test of “ probable cause” required by the Fourth Amendment can take into account the nature of the search that is being sought. (Frank v. Maryland, supra.) Therefore, less proof would be *673 required to obtain a search warrant in regard to health situations than would ordinarily be needed. In addition, it has been held that in emergency situations, prompt inspections may be made even without a warrant. (Camara v. Municipal Ct., supra.) As one example, the court in the Camara case cited North Amer. Coed Stor. Co. v. City of Chicago (211 U. S. 306) which involved seizure of unwholesome food. As stated by the court in Camara (supra, pp. 539-540): “ on the other hand, in the case of most routine area inspections, there is no compelling urgency to inspect at a particular time or on a particular day. Moreover, most citizens allow inspections of their property without a warrant. Thus, as a practical matter and in light of the Fourth Amendment’s requirement that a warrant specify the property to be searched, it seems likely that warrants should normally be sought only after entry is refused unless there has been a citizen complaint or there is other satisfactory reason for securing immediate entry. Similarly, the requirement of a warrant procedure does not suggest any change in what seems to be the prevailing local policy, in most situations, of authorizing entry, but not entry by force, to inspect.” It does not appear that the case at bar involved an emergency situation. The wording of the complaint only indicates that the floors were maintained in such a way as to make cleaning difficult. Therefore, the search could not be justified on this basis. However, it is clear from a reading of Camara that a warrant need only be obtained after a refusal to allow an investigation to be made, and that ordinarily these investigations are consented to. It is also clear from a reading of defendant’s moving papers that there was never a refusal to allow the inspection to be made. The sole basis for the defendant’s motion is the fact that a search warrant was never exhibited to him. However, the inspectors came on five or six different occasions and were never refused entry. Although the burden of proof on the issue of consent to search lies with the People, defendant does not raise the issue of nonconsent, and by his own admission in effect, settles the question. The search did not become illegal solely because the inspectors lack a search warrant, and so long as there was no refusal to allow inspection of the premises, there was no requirement that a warrant be obtained.
Motion to suppress is denied.