OPINION OF THE COURT
Rena K. Uviller, J.
This motion to compel discovery and cross motion for a protective order require this court to consider the applicability of the Fourth Amendment’s proscription against unreasonable searches and seizures to inspections of food establishments, authorized by the New York Agriculture and Markets Law.
On May 26 and June 1, 1978, an inspector from the plaintiff, New York State Department of Agriculture and Markets (hereinafter the Department), attempted to enter the premises of the defendant, Iranian Caviar and Sturgeon Corp. On both occasions the inspector was denied access. The Department thereupon instituted this action to recover a civil penalty in the amount of $600 pursuant to sections 35 and 39 of the Agriculture and Markets Law. Although section 41 of the Agriculture and Markets Law authorizes a misdemeanor conviction for violation of any of its provisions, the Department seeks only a civil fine in this case.
The inspector sought entry pursuant to section 20 of the statute which provides that the Department "shall have full access to all places of business * * * used in the production, manufacture, storage, [or] sale * * * of any article or product with respect of which any authority is conferred by this chapter on the department.” (It is undisputed that defendant’s business is covered by the statute.) In the event that access is refused, section 20-a provides that a search warrant shall issue from an appropriate court upon a showing either, that there are reasonable grounds to believe that the owner has' any food products in his possession, or that he is in violation of the statute’s substantive provisions. Neither the complaint nor the motion papers reveal whether a warrant was sought or denied in this case.
The defendant has not yet served or filed his answer. Instead, he seeks to depose a Department employee (CPLR 3102, subd [f]) concerning the attempt to search defendant’s premises. He also seeks inspection of the Department’s relevant books and records. Defendant contends that a defense to this action is the violation of his right to be secure from *1039 warrantless searches guaranteed by the Fourth Amendment to the United States Constitution and applicable to the States through the Fourteenth Amendment. (See Wolf v Colorado, 338 US 25.) He seeks discovery in order to assert this defense.
The Department counters that the statute confers an absolute right of access to food establishments and that under no circumstances is the inspector required to obtain a warrant. Inasmuch as defendant does not dispute the denial of access, it is the Department’s position that there is no need for discovery. The threshold question thus is whether there exists a viable Fourth Amendment defense to this action which renders discovery appropriate.
In Frank v Maryland (359 US 360), the United States Supreme Court upheld the conviction of a homeowner who prevented a municipal health inspector from entering his home without a search warrant. The court held that health inspections are not searches within the meaning of the Fourth Amendment and that the public interest in maintaining health and safety standards outweighed any marginal privacy interests that might be thus offended. A similar conviction was upheld the next year in Eaton v Price (364 US 263).
In the years that followed, two separate developments ultimately impelled a reconsideration of the Frank-Eaton rationale. First, heightened sensitivity and public concern for the hazards of congested urban living led to proliferation of official health and safety codes. These were administered increasingly through expanded and sophisticated inspection techniques by government agencies at all levels. Concomitantly, and perhaps at odds with the foregoing, there developed in the criminal field a concern about official excesses in the gathering of evidence for criminal prosecutions. The years after Frank and Eaton witnessed the imposition upon law enforcement agents of significant limitations in their search for evidence of criminal activity. (See Mapp v Ohio, 367 US 643; Ker v California, 374 US 23.)
In 1967, the Supreme Court overruled Frank and Eaton. In Camara v Municipal Ct. (387 US 523) and in See v City of Seattle (387 US 541), the court held that the Fourth Amendment does protect against unreasonable searches and seizures in civil as well as criminal investigations; that a warrant is required not only where evidence of a crime is sought, but where a government agent seeks entry for a health and safety inspection as well. In Camara, the inspector sought entry to a *1040 home for a routine annual inspection pursuant to the city’s housing code. In See, the entry was for purposes of a fire inspection at a private commercial business. Ruling that warrantless searches of businesses, as well as homes, would no longer be tolerated in the course of civil, regulatory inspections, See underscored that "[t]he businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commerical property. The businessman, too, has that right placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant.” (See v City of Seattle, supra, at p 543.)
Although Camara and See held that warrants are required for civil inspections, the standard upon which the warrant might issue was different from a criminal case. The inspector need not have probable cause to believe the property owner is in violation of substantive regulations. Rather, a warrant may issue on a showing that "reasonable legislative or administrative standards for conducting an * * * inspection are satisfied with respect to a particular [establishment].” (See v City of Seattle, supra, at p 538.) Unless there is an emergency requiring immediate entry (see, e.g., North Amer. Storage Co. v Chicago, 211 US 306; Jacobson v Massachusetts, 197 US 11), the court held that "warrants should normally be sought * * * after entry is refused” (Camara v Municipal Ct., supra, at p 539). As a practical matter, the court observed, most owners will consent to inspections, but where they do not a warrant is required.
In both See and Camara, the property owners faced criminal penalties for refusing to admit the inspectors. The Supreme Court, however, paid scant attention to the nature of the penalty, focussing instead upon the need to "safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.” (Camara v Municipal Ct., supra, at p 528.) Yet New York courts interpreting Camara and See, have stressed the nature of the penalty imposed upon the nonadmitting property owner. Where the penalty has been civil rather than criminal in nature, some courts have held that a warrant is unnecessary and that there is an absolute right of official access such as the Department claims in this case. (Cf. People v Northrop, 97 Misc 2d 606; Pashcow v Town of Babylon, 96 Misc 2d 1036; see, Uzzillia v Commissioner of *1041 Health of State of N. Y., 47 AD2d 492, app dsmd 37 NY2d 771).[1]
The availability of a criminal sanction under the instant statute brings this case squarely within the factual as well as the logical ambit of Camara and See. Any lingering doubt stemming from this plaintiff's recourse to a civil penalty only, must yield to the most recent Supreme Court case on the subject, Marshall v Barlow’s Inc. (436 US 307.) In Marshall, the only available penalty against a recalcitrant property owner was a civil fine. (Supra, at p 318, n 13.) Aside from one case wholly distinguishable from the instant one on its facts, New York courts have not yet considered the impact of Marshall upon health and safety inspections in this State.1 [2]
The only issue before the Supreme Court in Marshall was whether the Occupational Safety and Health Act, which made no provision for a warrant or other process prior to an inspection, violated the Fourth Amendment. Although the commissioner had adopted a regulation requiring a court order in the event of denial of access, and although such an order was in fact obtained, on appeal to the Supreme Court, the commissioner insisted upon his right to a warrantless inspection under the statute. (The property owner had obtained an injunction from the Federal District Court after having twice denied access to the inspector.)
Reaffirming Camara and See, the Supreme Court in Marshall held that the statute, in failing to provide for a warrant or other process, violated the Fourth Amendment. "The authority to make warrantless searches”, wrote Justice White *1042 for the majority, "devolves almost unbridled discretion upon executive and administrative officers, particularly those in the field, as to when to search and whom to search.” (Marshall v Barlow’s, Inc., 436 US 307, 323.)
Marshall reiterated that for health and safety inspections, probable cause to believe that the property owner is in violation of substantive regulations is unnecessary. The warrant may issue (p 320) "on a showing that 'reasonable legislative or administrative standards for conducting an * * * inspection are satisfied with respect to a particular [establishment].” The warrant, explained Justice White should (p 323) "provide assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria. Also, a warrant would then and there advise the owner of the scope and objects of the search, beyond which limits the inspector is not expected to proceed.”
Here, section 20-a of the statute provides that where a property owner refuses to admit the inspector a warrant shall be sought. Unlike the Marshall statute, this statute thus comports with Fourth Amendment requirements. The Department’s claim of an absolute right of entry is, accordingly, in error both with regard to the statute and the United States Constitution. Under most circumstances, the Department’s failure to obtain a warrant would be a viable defense to this action. In order to assert this defense defendant is entitled to discovery.
In light of the foregoing, plaintiffs bald assertion that "any interoffice memorandum of the Department * * * or its agents concerning the complaint would be the work product created by or for the purpose of preparation for litigation” is insufficient to defeat discovery. The burden is on the party resisting discovery to show that the material sought is protected from discovery. (Dikun v New York Cent. R. R., 58 Misc 2d 439; Weisgold v Kiamesha Concord, 51 Misc 2d 456.)
The defendant’s motion is granted.

. Uzillia is the only post Camara and See case in New York for which review was sought in the Court of Appeals. The Appellate Division had held that revocation of a business operating license as a consequence of a warrantless inspection constituted a Fourth Amendment violation but that the imposition of a fine did not. Uzillia, however, expressly relied upon a well-established exception to Camara and See in that it concerned a licensed and heavily regulated industry — nursing homes. Where the premises to be inspected are used for purposes which have long been subject to a high degree of government regulation, the Supreme Court has held that there is an implied consent to the inspection and that a warrantless entry is permissible. (United States v Biswell, 406 US 311 [firearms]; Colonnade Corp. v United States, 397 US 72 [liquor].)

. See People v Nissen (97 Misc 2d 1000), in which the trial court refused to suppress 14,000 pounds of marihuana seized in a warrantless search of a foreign vessel. The vessel had been operating in coastal waters in patent violation of navigation safety standards when observed by the Coast Guard. Under these circumstances the warrantless search was within the "emergency” exception to Camara and See.