545 So.2d 531 (1989)
STATE of Louisiana
v.
Gary BARTHELEMY, et al.
No. 88-KA-2766.
Supreme Court of Louisiana.
June 19, 1989.
William J. Guste, Jr., Atty. Gen., Darryl W. Bubrig, Sr., Dist. Atty., David M. Hufft, Asst. Dist. Atty., for appellant.
William P. Quigley, New Orleans, Chester A. Eggleston, Port Sulphur, Terry W. *532 Sercovich, Belle Chasse, William A. Roe, Alden B. Netterville, Gretna, Peter A. Barbee, Timon Webre, New Orleans, for appellees.
Zeljko Srsen, in pro per.
Eugene J. Ruiz, II, in pro per.
Donald W. Estave, in pro per.
Silvester Torres, in pro per.
Jose J. Illescas, in pro per.
Frank Culpepper, in pro per.
Norman L. Smith, in pro per.
Craig B. Long, in pro per.
COLE, Justice.
These consolidated cases are before us on direct appeal pursuant to La. Const. Art. V, § 5(D). The 87 defendants were all charged with harvesting oysters from closed waters in violation of La.R.S. 56:424. The trial court, without assigning reasons, held the statute unconstitutional and quashed the Bills of Information. For the reasons assigned below, we find the statute is constitutional, reverse the trial court and remand these cases for further proceedings.

I. ISSUE
These consolidated cases raise a single issue:
Whether La.R.S. 56:424 is unconstitutional on the ground of vagueness or as an impermissible delegation of legislative power to an administrative agency.

II. FACTS
The factual record before us is sparse and contains no information about the individual defendants or the circumstances resulting in the criminal charges. All the defendants were charged with taking oysters in violation of R.S. 56:424 between August 26, 1987 and April 29, 1988. Three of the defendants (Barthelemy, Encalade and Reddick) were charged with taking oysters in violation of R.S. 56:424(F), enacted by 1985 La. Acts 875, which provided:
F. (1) No oysters shall be harvested or sold in the State of Louisiana or in interstate commerce for food unless taken from areas approved by the state health officer....
(2) Violation of the provisions of this Subsection constitutes a class three violation.
The remaining defendants were charged with illegal harvesting after September 1, 1987, the effective date of 1987 La. Acts 924. This statute deleted La. R.S. 56:424(C) with a resulting numbering change; R.S. 56:424(F) became R.S. 56:424(E). The 1987 amendment made no change in the operative language of R.S. 56:424(F).
The defendants filed motions to quash the Bills of Information, alleging R.S. 56:424(F) (or (E)) was unconstitutional.[1] An evidentiary hearing was held at which the defendants adduced testimony by members of the State Health Department and the Department of Wildlife and Fisheries concerning the administrative procedures followed in closing waters to oyster fishing. The trial court subsequently granted the defendants' Motions to Quash and held the statute unconstitutional. The State now appeals.

III. ANALYSIS
A. Vagueness Argument
Though the defendants rely primarily on the argument that R.S. 56:424(E) is unconstitutional as an impermissible delegation of legislative authority, some of the defendants argue the statute is also unconstitutionally vague. We disagree.
Our prior jurisprudence indicates a statute is unconstitutionally vague if an ordinary person of reasonable intelligence is not capable of discerning its meaning and conforming his conduct to it. State v. Powell, 515 So.2d 1085 (La.1987); State v. *533 Broom, 439 So.2d 357 (La.1983); State v. Stilley, 416 So.2d 928 (La.1982); State v. Baron, 416 So.2d 537 (La.1982). In addition, a penal statute must provide adequate standards by which the guilt or innocence of the accused can be determined. See State v. Broom, supra; State v. Union Tank Car Co., 439 So.2d 377 (La.1984). Under La. R.S. 14:3 and 14:7, penal statutes must be narrowly, but genuinely, construed. We find R.S. 56:424(E) clearly satisfies both these requirements under the applicable rules of construction.
Under the terms of the statute, the conduct proscribed is unambiguous: "No oysters shall be harvested or sold in the state of Louisiana ... unless taken from areas approved by the state health officer." R.S. 56:424(E). The defendants do not deny that an "ordinary person" of "reasonable intelligence" is capable of understanding what he must do in order to comply with R.S. 56:424(E). Compliance merely entails taking oysters only from waters approved by the state health officer. No citizen is called upon to determine, at his peril, what waters should be closed because of pollution; this task is properly left to the expertise of the health officer. Second, since the conduct constituting the offense is harvesting oysters from unapproved waters, a clear standard exists by which guilt or innocence can be determined. Either a person has harvested oysters from closed waters or he has not and the State bears the burden of proving this element of the offense beyond a reasonable doubt.
In addition, no question of inadequate notice is presented here. The defendants concede that maps showing areas open to harvesting are published in the Louisiana Register and posted at previously announced sites.[2] Finally, R.S. 56:424(E) is in complete accord with the general rule laid down in R.S. 56:424(A) that: "No person shall take oysters from any of the waters of the state ... except in accordance with rules and regulations promulgated by the commission." When taken as a whole, R.S. 56:424 provides for a general prohibition on taking oysters from Louisiana waters subject to clear and unambiguous exceptions. Whether the conduct of these defendants fell within permissible limits is a question properly resolved by a trial on the merits.
In short, we find the challenged statute's meaning is clear and readily understandable. It provides clear standards for determining the guilt or innocence of the accused, and proper notice of closed and open waters was given. We therefore reject the argument that R.S. 58:424(E) is unconstitutionally vague.
B. Separation of Powers Argument
The defendants' main challenge to the constitutionality of R.S. 56:424(E) raises an issue reserved by the Court in our decision in State v. Powell, supra: whether the statutory delegation to the state health officer of power to designate areas where oysters may be harvested passes constitutional muster as a permissible delegation of legislative power. 515 So.2d at 1087. We conclude that it does and find the defendants' arguments to the contrary are without merit.
The defendants argue that R.S. 56:424(E) is unconstitutional as an impermissible delegation of legislative power to an executive agency. They allege the statute violates La. Const. Art. II, § 2 which provides that none of the three separate branches of state government may exercise power belonging to either of the others and La. Const. Art. III, § 1 which merits the legislative power exclusively in the legislature. More specifically, they contend R.S. 56:424(E) is contrary to these provisions because it lacks adequate legislative standards to protect against the arbitrary exercise of authority by the agency. In addition, they argue this absence of standards gives an agency the power to define a crime.
*534 If R.S. 56:424(E) were the only applicable law governing the opening of waters by the state health officer, the defendants' arguments that it contains an unconstitutional delegation of authority might have some merit. Other provisions of the Revised Statutes, however, contain specific policy statements and standards that limit the discretion of the state health officer. The Sanitary Code, for example, requires the state health officer to promulgate rules designed to protect the consuming public against "food-borne diseases" and to provide that foods, including "marine and freshwater seafood" are sanitary and wholesome. R.S. 40:4(A)(1). More specifically, R.S. 40:5.3, which was in force at all times relevant to these proceedings, provides:
A. The legislature finds and declares that serious risks to public health are posed by pollution of oyster beds because oysters, being immobile, are affected by pollutant levels in the water, and that it is in the best interest of the public health and welfare, as well as the oyster industry, that the state be authorized to immediately close from harvesting any oyster water bottoms affected by pollution or other health danger, and to open immediately such water bottoms when it is determined that the pollution or other danger is no longer a threat to public health.
B. Notwithstanding the provisions of R.S. 40:4, the provisions of Chapter 13 of Title 49 of the Louisiana Revised Statutes, except R.S. 49:951, 952, 954.1, 963, and 965, shall not apply to procedures and proceedings to close from oyster harvesting any oyster water bottom affected by pollution or other public health danger, nor to procedures and proceedings for subsequent opening of any such water bottoms when the Department of Health and Human Resources and the Department of Wildlife and Fisheries jointly determine that the protection of the public health mandates or warrants such closure or opening, nor to procedures and proceedings for such determination.
C. The Department of Health and Human Resources shall accept and utilize certified water quality data from other state and local government agencies in water quality monitoring and sampling programs used by the department for certifying the quality of oysters harvested from Louisiana waters. However, nothing in this Subsection shall prevent the department from having the final decision making authority in the opening and closing of oyster water bottoms.
D. Approved oyster water quality monitoring plans from other state or local agencies may be shared in meetings called by the representative or senator from the respective district.[3]
The defendants, while acknowledging the applicability of R.S. 40:5.3, argue it too lacks sufficient legislative standards to support the delegation of power to an executive agency. This argument fails for two reasons. First, under the test articulated by this Court in Schwegmann Brothers Giant Supermarkets v. McCrory, and followed thereafter, a delegation of power by the legislature will be upheld if: (1) the statute expresses a clear legislative policy; (2) contains guidance for administrative officials in executing the law and (3) the standards do not permit arbitrary action by the administrative agency. 237 La. 768, 112 So.2d 606, 613 (1959). See also Adams v. State, Dept. of Health and Human Resources, 458 So.2d 1295, 1298 (La. 1984); State v. Union Tank Car Co., 439 So.2d at 380. We conclude R.S. 56:424(E), read in pari materia with R.S. 40:5.3, satisfies the Schwegmann Brothers test and therefore the statute is facially valid. Second, the rules, regulations and standards actually adopted by the state health officer are reasonable and in keeping with the legislative mandate. We thus conclude the statute is also constitutionally valid as applied.
*535 A straightforward application of the Schwegmann Brothers three-prong test compels the conclusion that R.S. 56:424(E) and R.S. 40:5.3, taken together, set out a constitutionally valid regulatory scheme. First, R.S. 40:5.3(A) contains a clear and appropriate statement of legislative policy; the purpose of the statute is to provide for the closure of oyster waters affected by pollution or other problems that might pose a threat to public health.
Second, R.S. 40:5.3(A) and (C) contains guidance for administrative officials in making their decision on whether to close waters to oyster fishing. A fair reading of these provisions indicates the state health officer has the power to close waters when proper water quality data indicates the waters are affected by pollution that poses a health danger. R.S. 40:5.3(A) also compels the officer to reopen waters when the threat to public health no longer exists. The statute limits the authority of the administrative officer to close oyster waters to situations where pollutants pose a genuine health danger. The more precise formulation of what levels of what substances constitute a health threat is properly left to the expertise of the agency.[4]
For much the same reasons, R.S. 40:5.3 and R.S. 56:424(E) meet the third prong of the Schwegmann Brothers test. The state health officer is authorized to close waters only in the event of a threat to public health. The officer may not arbitrarily close oyster waters absent such a threat on the basis of mere whim or caprice. We note that although because of the need for prompt action, the legislature exempted the closure of oyster beds from most provisions of the Louisiana Administrative Procedure Act, an individual who believes the state health officer has acted improperly may challenge the decision to close waters by a request for departmental review and/or by an action for a declaratory judgment. In light of the strong interest of the state in protecting its citizens from the grave and immediate health risks posed by contaminated oysters, we find these safeguards provide adequate protection against arbitrary decisions by the state health officer. Cf. North American Storage Co. v. Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (due process does not require pre-seizure hearing in case of contaminated food because of compelling state interest in protecting public health). We therefore conclude the regulatory scheme of R.S. 56:424(E) and R.S. 40:5.3 satisfies all three prongs of the Schwegmann Brothers test and is therefore a facially valid delegation of authority by the legislature to an executive agency.[5]
We note also the regulations and standards adopted to govern the closing of oyster beds because of pollution are reasonable and in keeping with the public health guidelines laid down in Title 40 of the Revised Statutes. The state health officer has reasonably interpreted "pollution" as the presence of deleterious substances in the waters where the oysters are found, which can be absorbed into the food chain and which are inconsistent with public health. To judge the threat to public health posed by substances in the water, the state health officer has, by rule, adopted the federal testing standards and procedures set out in the Manual of Operations of the National Shellfish Sanitation Program as well as standards promulgated by the Food and Drug Administration. The defendants do not challenge the propriety of these standards or argue that the procedures followed in determining what waters should be closed to oyster fishing are actually unreasonable. They only allege they might be. We held above that *536 the delegation scheme challenged here was valid on its face and we also conclude the delegation made to the state health officer is valid as applied to these defendants.

IV. CONCLUSION
We conclude the constitutional challenge raised in these consolidated cases is without merit. The vagueness argument fails because the elements of the offense with which the defendants are charged are clear and unambiguous. We find R.S. 56:424 and 40:5.3 satisfy the Schwegmann Brothers test and are therefore facially valid delegations of limited authority to administrative agencies. We also conclude, on the basis of the record before us, that the agency has not exceeded the scope of its authority or abused its discretion. Therefore the statutes are constitutional as applied. For these reasons, the judgment of the trial court quashing the Bills of Information charging the defendants with taking oysters in violation of R.S. 56:424 is reversed. These cases are remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
CALOGERA, J., concurs.
LEMMON, J., dissents and assigns reasons.
NOTES
[1] For the sake of convenience, we will refer to the statute at issue here as R.S. 56:424(E) since all but three defendants were charged under the statute as cast after the 1987 amendment. With respect to defendants Barthelemy, Encalade and Reddick, this designation encompasses Subsection (F) of the statute before the 1987 amendment.
[2] We do not consider the question of whether, in individual cases, the boundary between open and closed waters is difficult to determine. This question depends on the facts of each case and cannot be determined here on the record before us. For purposes of this case, it is sufficient to say that the statute is valid on its face as a matter of constitutional law.
[3] R.S. 40:5.3 was amended by 1988 La. Acts 1, effective May 12, 1988, to adopt the standards promulgated by the Interstate Shellfish Sanitation Conference. This amendment merely codified existing practices; it was not necessary to cure a constitutional defect in the existing law.
[4] Water pollution is defined in R.S. 30:2073(4) as any substance "in concentrations which tend to degrade the chemical, physical, biological or radiological integrity" of the water. R.S. 40:5.3 adds the additional requirement that the pollution pose a threat to public health if absorbed by oysters.
[5] Since we conclude the delegation of power in R.S. 56:424(E) and R.S. 40:5.3 is facially valid, there is no question that the legislature, not the state health officer, criminalized the behavior at issue here. It was the legislature that made taking oysters in unapproved waters a criminal offense. The agency simply brings its public health expertise to bear on the question of which waters should be "approved."