**Ruth CAGLE, Plaintiff—Appellant,**

v.

**KING COUNTY, a political subdivision of the State of Washington, et al., Defendants—Appellees.**

No. 01–36119.

D.C. No. CV–01–00740–RSL.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 2003.

Decided July 9, 2003.

Before CUDAHY,* O'SCANNLAIN, and GOULD, Circuit Judges.

## MEMORANDUM**

Ruth Cagle appeals the district court's order affirming the decision of the King County Hearing Examiner. Because the relevant facts are known to the parties they are not repeated here.

### I

Cagle's first claim on appeal is that the Seattle King County Department of Public Health (the "Department") failed to perform an adequate inspection of her premises as required under Washington law.[1] Cagle's primary contention is that the inspection was deficient because Jasmine George, a representative of the Department, failed to physically enter and to examine some of the allegedly contaminated areas of her residence.

But the Hearing Examiner determined that George's inspection of the premises included consultation with knowledgeable police officers who were present at the scene. Indeed the Hearing Examiner concluded that the officers informed George of

---

* The Honorable Richard D. Cudahy, Senior United States Circuit Judge for the Seventh Circuit Court of Appeals, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. At the outset, we note the basis of our jurisdiction over Cagle's appeal. In her complaint filed in the administrative action before the Hearing Examiner, Cagle argued that the inspection conducted by the Department failed to abide by applicable Washington state regulations. In addition, because such regulations do not provide any opportunity for a pre-deprivation hearing, Cagle alleged that her state and federal due process rights had been violated. After the Hearing Examiner issued his decision, the King County Superior Court granted Cagle's petition for a writ of certiorari, whereupon King County successfully petitioned to have the case removed to federal court pursuant to 28 U.S.C. § 1441. *Accord City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 162, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (addressing "whether a case containing claims that local administrative action violates federal law, but also containing state law claims for on-the-record review of the administrative findings, is within the jurisdiction of federal district courts." The Court concluded that there was jurisdiction because neither the "statutes nor [its] prior decisions suggest that federal jurisdiction is lacking in these circumstances."). After the district court affirmed the Hearing Examiner's decision, Cagle timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1291.

hazardous chemical use and storage on the premises, that the shed located in close proximity to the home had been used as a methamphetamine laboratory, that sales of methamphetamine had been conducted from the home, and that various drug paraphernalia had been discovered on site.

■ On the basis of this inquiry, George was adequately informed as to the nature and scope of the health and safety risk posed by the contaminated areas of Cagle's residence.[2] Accordingly, because the determination that the property was unfit for occupancy was made in full compliance with Wash. Admin. Code §§ 246–205–530, 246–205–540, Cagle's challenge to the contrary must fail.[3]

## II

■ Cagle next contends that the Washington statutory and administrative scheme denied her due process because her home was declared unfit for occupancy without the benefit of prior notice and hearing. In *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court specified the relevant factors in evaluating such a claim:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of

additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

In applying this test, we have previously held that "[d]ue process generally includes an opportunity for some type of hearing before the deprivation of a protected property interest." *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1317 (9th Cir. 1989). But we recognized that "there are exceptions to the pre-deprivation hearing requirement." *Id.*

Indeed, the Supreme Court has held: "[T]he necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." *Parratt v. Taylor,* 451 U.S. 527, 539, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *rev'd on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). "It is well-settled that protection of the public interest can justify an immediate seizure of property without a prior hearing." *Soranno's,* 874 F.2d at 1318. *See also N. Am. Cold Storage Co. v. City*

---

**2.** Even though Cagle claims that the Hearing Examiner erred by allowing the testimony of forensic expert Dale Mann concerning the levels of methamphetamine contamination he found on the premises, the Hearing Examiner allowed such testimony only as evidence of the present condition of the property. There was no abuse of discretion because Mann's testimony directly addressed whether the property was fit for use at the time of the administrative hearing.

**3.** Cagle also claims that George in her investigation improperly relied on a flawed contamination standard of five micrograms per

square foot. But the Hearing Examiner expressly disavowed any reliance on this standard. Indeed, the Hearing Examiner concluded that the same evidentiary findings that comprised George's inspection also supported her assessment of contamination. And to the extent that Cagle challenges the merits of the findings made by the Hearing Examiner, there is substantial evidence to support its determination that Cagle's property was the site of an illegal methamphetamine drug laboratory and that the presence of various chemicals and substances posed a threat to public safety.

*of Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (state may seize and destroy unwholesome food without pre-seizure hearing); *United States v. An Article of Device "Theramatic",* 715 F.2d 1339 (9th Cir.1983) (government seizure of "misbranded" machine under Food, Drug, and Cosmetic Act without prior notice or hearing did not violate due process).

In *Soranno's,* the issue was whether due process was violated when local officials suspended a corporation's petroleum bulk permit without the opportunity for a pre-deprivation hearing. We held: "The California legislature has determined that swift administrative action may be necessary in order to protect the public health and safety from violations of the state's pollution control regulations. We are not in a position to second-guess that legislative determination." 874 F.2d at 1318. We went onto say that "the relevant inquiry is not whether a suspension should have been issued in this particular case, but whether the statutory procedure itself is incapable of affording due process. Given the public interest in ongoing enforcement of pollution control regulations, the statutory procedure authorizing prompt post-deprivation hearings is sufficient to afford bulk plant permit owners due process." *Id.*

Likewise, given the public interest in having contaminated properties isolated and de-contaminated before they adversely affect the general population, Washington's regulatory scheme does not deprive property owners such as Cagle due process of law. The stated purpose of the comprehensive legislative scheme is clear: "Regulating the occupancy and use of property where hazardous chemicals or chemical residues commonly associated with the manufacture of illegal drugs are or may be present." Wash. Admin. Code § 246–205–001. Given this compelling public health and safety interest, the procedures provided for by Washington law are more than adequate to protect Cagle's cognizable property interest. *See* Wash. Rev.Code § 64.44.030 (an order deeming a property unfit for use must notify the affected property owner of their right to hearing, and such a hearing must be held within 20–30 days after posting of the order).

AFFIRMED.