483 So.2d 945 (1986)
Lawrence BELL, Wilbert Bell, Kernan Perkins and George Hardy
v.
DEPARTMENT OF HEALTH AND HUMAN RESOURCES, East Louisiana State Hospital and Department of State Civil Service.
No. 85-C-1541.
Supreme Court of Louisiana.
February 24, 1986.
Rehearing Denied March 20, 1986.
*946 J. Arthur Smith, III, Baton Rouge, for plaintiffs-applicants.
Robert R. Boland, Jr., Baton Rouge, for defendants-respondents.
BLANCHE, Justice.
On December 23, 1982, plaintiffs were informed by letter from the Director of the Department of Civil Service that they were reallocated from their former position of Equipment Operator I to the position of Labor-Utility. Exercising their right for a review of the reallocation, plaintiffs appealed the reallocation decision to the Director. The Director undertook a "desk audit" and based on the report affirmed the reallocation. Plaintiffs objected to the affirmation on the ground that the decision was based on documents not furnished to them. The Director rescinded his decision and ordered a new "desk audit." A second report was prepared by personnel not involved in the *947 original "desk audit." Based on the second report, the Director reaffirmed the reallocation. Copies of the audit reports were sent to plaintiffs' counsel.
Plaintiffs appealed the Director's decision to the Civil Service Commission. In their appeal, plaintiffs allege that the reallocation was improper (1) because it resulted in their being demoted without cause, (2) because the reallocation was the result of discrimination, (3) since their duties had not changed, the reallocation violated Civil Service Rule 1.32 (hereinafter cited as "CSR"), and (4) because the procedures utilized to effectuate these reallocations violated procedural due process requirements. The Commission granted the request of the Department of Civil Service for summary dismissal of the first two of plaintiffs' three claims, but ordered the appeal referred to the merits to consider whether there had been a Rules violation.[1]
On appeal, the Court of Appeal affirmed the decision of the Commission dismissing the first two of plaintiffs' three claims[2], finding that the plaintiffs are not entitled to a pre-reallocation notice in writing of the grounds for the action, nor are they entitled to a pre-reallocation hearing. The court's decision was based on the fact that the present version of our constitution only provides these safeguards in "disciplinary actions." Compare La. Const. art. XIV, § 15(N)(1) (1921 version). Further, the court found that the reallocation procedures did not violate plaintiffs procedural due process rights. Finally, the court found that the plaintiffs did not allege facts in support of their claim of discrimination with sufficient detail so as to entitle them to a Commission review on this issue. Bell v. Department of Health & Human Resources, 472 So.2d 235 (La.App. 1st Cir. 1985).
We granted writs on application of the plaintiffs to determine (1) whether the reallocation procedures adopted by the Commission satisfy constitutional mandates, and (2) whether the plaintiffs have stated a ground for appeal under the Civil Service Rules. Specifically, we are called to decide whether Article X, § 8(A)[3] and/or Article I, § 2[4] require pre-deprivation notice and a hearing, as is provided for in disciplinary actions, in a reallocation situation. Further, we are called to decide, assuming that the present reallocation procedures pass constitutional muster, whether the plaintiffs have alleged facts in support of their claim of discrimination with sufficient detail to state a basis for an appeal to the Commission. 477 So.2d 91 (La.1985).

Constitutional Mandates Relative to Reallocation Procedures
The resolution of the issues presented involves two separate and distinct constitutional questions. First, we must determine if Article X, § 8(A) applies to reallocation decisions, and thus accords the procedural rights plaintiffs seek. If not, then we must determine if the reallocation procedures adopted by the Commission satisfy Article I, § 2 and its notions of procedural due process.
In arguing that plaintiffs are entitled to the protections of Article X, § 8(A), counsel for the plaintiffs relies on the case of Perkins v. Director of Personnel, 220 So.2d 253 (La.App. 1st Cir.1969), and various sections of the Civil Service Rules. In Perkins, supra, the court held that a civil *948 service employee whose position was reallocated to a lower class was demoted within the meaning of the then constitutional provision requiring the appointing authority to give the employee pre-reallocation notice in writing and an opportunity to be heard. In reaching its conclusion, the court, relying on CSR 1.11, 1.25 and 1.32, equated the terms "demotion" and "reallocation," and found that these procedural safeguards were required by Article XIV, § 15(N)(1) which provided:
No person in the State or Classified Service, having acquired permanent Civil Service status, shall be demoted ..., except for cause, expressing in writing....
La. Const, art. XIV, § 15(N)(1) (1921 version, superceded by La. Const, art. X, § 8(A) (1977)) (emphasis added). This reliance is misplaced.
Article XIV, § 15(N)(1) was not carried over in the 1974 Constitution. The substance of that article is now contained in Article X, § 8(A). In essence, civil service employees are now only granted the right to pre-deprivation notice in writing and a hearing in disciplinary actions.[5] Our question becomes whether a reallocation is a disciplinary action within the meaning of our present constitution. For the following reasons, we conclude that it is not.
Having reviewed the entire scheme of the Civil Service Rules, demotions and reallocations are mutually exclusive actions. Demotion is defined as "a change of a permanent or probationary employee from a position of one class to a position of another class for which a lower minimum rate of pay is prescribed." CSR 1.11. Reallocation is defined as "a change in the allocation of a position from one class to another class wherein the duties of the position have undergone a change." CSR 1.32. Plaintiffs argue that a reallocation by definition is a demotion, and that as a demotion, it encompasses the procedures outlined in CSR 12.1 et seq., the provisions dealing with disciplinary actions. Since Chapter 12 of the Rules provides the same procedural protections as Article X, § 8(A), by implication plaintiffs argue that this article is also applicable. This argument is without merit.
It is without question that by virtue of the reallocation plaintiffs were "demoted" within the meaning of the term as defined in CSR 1.11. Additionally, it is without question that a demotion is a disciplinary action, see CSR 12.1 et seq., and therefore entitled to the procedural protections of both the Civil Service Rules and Article X, § 8(A). However, plaintiffs' reasoning falters when they argue that a reallocation, merely because of semantics, is entitled to the same procedural protections under Article X, § 8(A) as are other disciplinary actions. We conclude that it is the substantive nature of the action, rather than its definition, which is controlling.
Reallocation is not a disciplinary sanction. The Director's recommendation of a reallocation is in no way dependent on the job performance of the employee. The Director is merely fulfilling his duty to provide a system of uniform pay based on classification of job activities. CSR 3.1(p). His decision to reallocate an employee is based on an analysis of the duties performed (as distinguished from the competency of the performance). Upon determining what duties an employee actually performs, the Director then merely looks to the job description of respective classes to determine into which class the employee is to be situated.
Perkins, supra, was correct, and our present constitution does not change the holding, that in situations where an employee is demoted (a disciplinary action under CSR 12.1 et seq.), Article X, § 8(A), as well as the Civil Service Rules, require that there be pre-discipline notice in writing setting forth the cause for the action, and a hearing. Perkins, supra, was incorrect in concluding that a reallocation is a demotion, therefore giving rise to the same procedural *949 protections. To this extent, Perkins, supra, is overruled.
Because Article X, § 8(A) by its very terms does not provide plaintiffs the procedural protections they seek, we must determine whether Article I, § 2, and its embodiment of traditional notions of procedural due process, requires in a reallocation situation both pre-reallocation notice in writing setting forth the grounds for the decision and an opportunity to be heard. We first turn to a description of the procedures relative to a reallocation of an employee, and thereafter consider the factors bearing on the constitutional adequacy of these procedures.
Under the present version of the Rules, the provisions relative to reallocation provide for the following procedures. It is the duty of the Director to develop and propose to the Commission uniform classification and pay plans and amendments thereto. CSR 3.1(p). In fulfillment of his duty, the Director shall cause to be prepared a classification plan, which plan shall consist of job specifications, designated by standard titles, designed to provide for all positions in the classified service. CSR 5.1(a). After the adoption of the plan, the Director shall allocate each position in the classified service to its appropriate class, and may reallocate positions from class to class. CSR 5.2(a).
There is no provision for a pre-reallocation notice in writing of the cause of the reallocation to be sent to the affected employee, nor is there a provision for a pre-reallocation hearing. Upon notice of the reallocation decision of the Director, an employee affected by the reallocation shall be afforded a reasonable opportunity to have his case reviewed by the Director, and the Director's decision shall be final unless the employee is accorded a right to appeal to the Commission. CSR 5.3(a) (emphasis added). An employee is basically granted a right of appeal to the Commission of the Director's review of the reallocation if:
(a) the employee has failed to obtain the requested relief from the reallocation after the request for review provided in CSR 5.3(a), and there are allegations that the Director's decision has been discriminatory; or
(b) the employee alleges that he has been deprived of any right by the violation of a Civil Service Rule; or
(c) as otherwise provided. (Other situations which allow a right to appeal are not at issue in this case.)
CSR 13.10 (emphasis added).
In the present case, plaintiffs appealed the reallocation to the Director pursuant to CSR 5.3. After two desk audits, the Director affirmed the reallocation. Plaintiffs appealed the decision to the Commission under CSR 13.10, alleging that the Director's decision was the result of discrimination, and that the Director had violated CSR 1.32. The second issue is still on appeal before the Commission. The merits of the discrimination allegation will be discussed later in this opinion.
At this point we will address plaintiffs' contention that the due process clause of the Louisiana Constitution, Article I, § 2, requires that they receive pre-reallocation notice in writing setting forth the grounds for the action and an opportunity to be heard. For the following reasons, we disagree and hold that in a reallocation determination an employee is not entitled to either a pre-reallocation notice or an opportunity to be heard. In this respect, the Rules adopted by the Commission relative to reallocations do not violate Article I, § 2, and its notions of procedural due process.
The provisions of the state constitution involving the Civil Service, Article X, § 1 et seq., and the Rules of the Commission are designed to secure adequate protection to the public career employee from political discrimination. They embrace the merit system, and their intent is to preclude favoritism. The purpose of the Civil Service Rules is to guarantee the security and welfare of the public service. Sanders v. Department of Health & Human Resources, 388 So.2d 768 (La.1980) (emphasis added). With this in mind, it is clear that tenure or classified civil service status is a property right within the meaning of Article I, § 2 of our constitution, a prerequisite to a due process challenge. Delta Bank & Trust Co. v. Lassiter, 383 So.2d 330 (La. 1980). Under our constitution and the Civil Service Rules, an employee who has gained classified permanent civil service status has an entitlement to his position, since he has already received the position, and applicable law guarantees him continued employment, save for some exceptions (i.e. *950 disciplinary sanctions for cause). Cleveland Bd. of Educ. v. Loudermill, supra; Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Having concluded that a classified permanent employee enjoys a property right in maintaining his status, it is axiomatic that his position may not be changed or abolished without due process of law. Cleveland Bd. of Educ., supra. The question becomes what process is due.
The decisions of the United States Supreme Court, as well as the jurisprudence of this state, underscore the trueism that "`[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." Mathews v. Eldrige, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). It is a flexible standard and calls for such procedural protections as the particular situation demands. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). It is particularly flexible in the area of administrative law. See Smith v. Division of Admin., 415 So.2d 381 (La.App. 1st Cir.1982); Hamilton v. La. Health & Human Resources Admin., 341 So.2d 1190 (La.App. 1st Cir.1976), writ refused 344 So.2d 4 (La.1977). Where the power of the government or an agency is to be used against an individual there is a right to a fair procedure to determine the basis for, and the legality of, such action. Nowak, J., et al., Handbook on Constitutional Law, Ch. 15, p. 477 (1978).
Our determination of the scope of procedural due process protections in a reallocation situation requires consideration of three distinct factors:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. See, e.g., Goldberg v. Kelly, supra, 397 U.S. [254], at 263-271, 90 S.Ct. [1011], at 1018-1022 [25 L.Ed.2d 287 (1970)].
Mathews, 424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33 (cited with approval in Cleveland Bd. of Educ., ___ U.S. at ___, 105 S.Ct. at 1491, fn. 2).
First, the significance of the private interest in retaining a previous level of earning capacity cannot be gainsaid. Such interests are the same in both a reallocation situation and a disciplinary action. In both, an employee will be deprived of a certain amount of their pay. Courts have frequently recognized the severity of depriving a person of income. Cf. Cleveland Bd. of Educ., supra, and authorities cited therein.
However the similarity between reallocations and disciplinary actions ends when one considers the mechanics of both as they relate to the chance for an erroneous decision. Unlike disciplinary actions, a reallocation is not the result of an evaluation of the job performance of an employee. It does not center on any facts surrounding the employee whatsoever. A reallocation is the result of an internal decision made by the Director after reviewing the job duties of an employee and comparing them with previously outlined job classifications. In this regard, there is little chance for an erroneous decision. Procedural due process concerns are lessened in a reallocation situation as opposed to a disciplinary action. Our constitution in Article X, § 8(A) recognizes this distinction, and we believe that the distinction is also valid under Article I, § 2.
In disciplinary actions, due process concerns are heightened since the focus in such actions is in the individual employee. Evidence is taken, and the Director then enters a decision based on his findings. Meaningful procedural due process notions are furthered by allowing pre-deprivation (disciplinary action) notice in writing setting forth the causes for the action, and an opportunity to be heard. By providing an employee with these minimal procedural protections, an employee can prepare a defense, call witnesses on his own behalf, testify himself, and cross examine opposing witnesses. These protections diminish the possibility of an erroneous deprivation prior to its occurrence. Such concerns are not meaningful in a reallocation.
*951 As alluded to, in a reallocation, there is no evidence taken. There are no witnesses, and the employee need not prepare a defense. The Director determines if reallocation is warranted based on the job duties of the employee and the job specifications stated in the classification system. At this point in the procedure, no meaningful application of the due process notions of notice and opportunity to be heard would be gained. See Cleveland Board of Education, supra. It is when the focus of the reallocation changes to considerations of the employee (i.e. allegations of discrimination), or when there are allegations of a Rules violation, that notice and an opportunity to be heard crystalize into something meaningful. Article I, § 2 would require that at this point there be these minimal procedural protections.
The Civil Service Rules satisfy Article I, § 2 in that they do provide for a review of the Director's actions by a neutral decisionmaker upon allegations of discrimination and/or a Rules violation. It is at this point that the neutral decisionmaker can assure that an employee's substantive due process rights have not been deprived without just cause.[6] Any benefit from a substitute procedure, requiring both pre-reallocation notice and an opportunity to be heard, would be outweighed by the burdens it would place on the system. Were an employee entitled to notice and a hearing in every reallocation, the maintenance of a uniform pay system would be jeopardized. Plaintiffs are sufficiently protected under the present scheme.
In closing, we note that there seems to be an emerging concept that in some instances due process is fulfilled by a "post deprivation" hearing. Cleveland Bd. of Educ., ___ U.S. at ___, 105 S.Ct. at 1493, 84 L.Ed.2d at 503 (citing with approval Ewing v. Mytinger & Casselberry, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); North American Cold Storage Co. v. Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908)). We believe that this view to procedural due process in certain situations is sound and is in support of our decision here. Prior to allegations of some improper actions on the part of the Director, there is no need for review. Upon allegations supporting a right of appeal, a right of review is accorded to a neutral decisionmaker. During the pendency of these actions, and for a period of two years, a downwardly reallocated employee's pay is frozen. While he no longer earns merit raises in the former pay range, he does earn the increases at his new (lower) pay range. CSR 6.28(b). It can be said that during these proceedings an employee has not been deprived of a significant property right, a prerequisite to any heightened due process inquiry. The high Court in Cleveland Bd. of Educ., supra, dealt with a termination situation where the affected employee would lose his pay immediately. The high Court relied strongly on this fact in support of its decision requiring pre-deprivation notice and a hearing. For the reasons stated herein, the same considerations are not present in a reallocation.

Discrimination
Plaintiffs have alleged discrimination by both their supervisor and the Director. They allege that their supervisor had personal animosity toward them, but they also state that their duties have remained unchanged. As the Court of Appeal notes: "Consequently their supervisor's personal amimosity could have no bearing on the reallocation." Bell, 472 So.2d at 238. From a review of the record we find that there was no manifest error. Although there could be situations where the supervisor might be able to discriminate against an employee he dislikes by reducing the employee's duties to the point that a reallocation would eventually follow, see Appeal of Gladys Rich, Docket Nos. 2010, 2520 and 2614 (La. Civil Service Commission, June 3, 1983), such is not the position of the plaintiffs. "Moreover, the question whether their duties have changed so as to merit the reallocation is yet to be resolved in their appeal still pending before the Commission." Id.
*952 It is plaintiffs' contention that the reallocation was the result of discrimination on the part of the Director which is more troublesome. It is only if the plaintiffs have alleged with sufficient specificity facts which support the conclusion of discrimination on the part of the Director that they have perfected an appeal as to the issue. CSR 13.11(d).[7] The Court of Appeal affirmed the decision of the Commission which concluded that plaintiffs have failed to perfect an appeal based on allegations of discrimination by either the supervisor or the Director. From a review of the record, we find no error. Plaintiffs have not alleged specific facts in sufficient detail to support their claims of discrimination. In essence, their allegations are mere conclusions which state that the Director applied a disparate standard in deciding their CSR 5.3 review request. Plaintiffs did not allege any action of the Director which constitutes discrimination. Therefore, plaintiffs have not complied with CSR 13.11(d) and their appeal on the issue of discrimination has not been perfected.

DECREE
For the above stated reasons, the judgment of the Court of Appeal for the First Circuit is affirmed.
AFFIRMED.
DENNIS, J., dissents with reasons.
CALOGERO, J., dissents and will assign reasons.
DENNIS, Justice (dissenting).
I respectfully dissent. The majority opinion approves a system with no notice to the employee prior to "reallocation" to a lower-paying position, and with no provision for a hearing before this reallocation, either formal or informal. The employee has the right to appeal the Director's decision to the Commission only in limited circumstances.
But as we noted in Wilson v. City of New Orleans, 479 So.2d 891 (La.1985), due process is not an all-or-nothing proposition which requires either a full trial-type adversary hearing or no process at all.
"In some circumstances due process does not require trial procedure but forbids resolving a question of adjudicative fact against a party without first allowing him to respond informally to a summary of adverse evidence." [2 Davis, Administrative Law, at 474 (1979)]... The cardinal proposition of [Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)] is that on a question of adjudicative fact for which a trial is not appropriate, due process may require notice and an opportunity for informal response; that the important idea of Eldridge is that a main reason for denying a trial-type hearing may be that the informal procedure the agency has provided is adequate, Id. at 474.... Wilson, Supra, at 897.
Relators in this case alleged that the Director denied their request to be allowed to respond in writing to the findings of the reclassification analysis, and that he refused to even let them respond orally before him. Such an informal procedure is the minimum due process requires when the government proposes to deprive persons of as important a property right as one-third of their salary.
The majority opinion also concludes that relators did not allege specific facts in sufficient detail to support a claim of discrimination. They alleged personal animosity on the part of their supervisor, Luther Cutrer; that the only employees whose positions were reallocated were those who worked for Mr. Cutrer; that Mr. Cutrer opposed step increases they received, and continued to be angry after they received these increases; that the adverse action against them was taken as a result of Mr. Cutrer's animosity; and that shortly after the reallocations were announced, Mr. Cutrer tried to get relators to resign to circumvent their right to appeal. These allegations support a claim of discrimination with sufficient specificity to entitle relators to a hearing on the claim. Under Civil Service Rule 1.14.1, discrimination includes consideration *953 of non-merit factors. Personal animosity of an immediate supervisor is clearly a non-merit factor.
For the foregoing reasons, I respectfully dissent.
CALOGERO, Justice, dissenting.
I respectfully dissent.
The majority opinion concludes that "[r]eallocation is not a disciplinary sanction," and therefore is not subject to the provisions of La. Const, art. X, § 8(A). That constitutional article provides in pertinent part:
No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing.
This provision requires that a cause be stated in writing prior to action in a disciplinary matter. Such a requirement does not appear to be an undue burden on administrators charged with making such decisions in view of a permanent civil service employee's property right in maintaining his status. Cleveland Bd. of Educ. v. Loudermill, ___ U.S. ___, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). However, if disciplinary action is not involved, as was found by the majority with regard to reallocation, then this standard of due process is not required.
To reach their conclusion it was necessary for the majority to determine that reallocation and demotion, the latter clearly a disciplinary matter, were "mutually exclusive actions." I do not agree. Although a reallocation need not always constitute a demotion, there surely are instances in which it may be.
I believe that reallocation and demotion are not mutually exclusive actions and that the procedural guarantees of La. Const, art. X, § 8(A) are applicable to both.
NOTES
[1] The Civil Service Commission did not address plaintiffs' constitutional challenges, nor did it have the authority to do so. See Appeal of Brisset, 436 So.2d 654 (La.App. 1st Cir.), writ denied 441 So.2d 749 (La.1983).
[2] Since the Commission treated defendants' Motion for Summary Disposition as an exception of no cause of action, all well pleaded allegations in the appeal letter are to be taken as true for the purposes of deciding whether they set forth a right of appeal. See Didier v. Department of Civil Service, 446 So.2d 886 (La.App. 1st Cir.1984).
[3] Article X, § 8(A) provides:

No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing. A classified employee shall have a right to appeal....
La. Const, art. X, § 8(A) (Supp.1985). In addition to the notice provided in this article, in certain situations, due process requires that there also be a pre-deprivation hearing. Cleveland Bd. of Educ. v. Loudermill, ___ U.S. ___, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), and authorities cited therein.
[4] Article I, § 2 provides:

No person shall be deprived of life, liberty, or property, except by due process of law.
La. Const, art. I, § 2 (1977).
[5] From a review of both the prior version of our constitution (Article XIV, § 15) and the present version (Article X, § 8) it is clear that the legislature in drafting the amendment attempted to eliminate excessive verbiage. See Thorenson v. State Dept. of Civil Service, 433 So.2d 184 (La. App. 1st Cir.), writ denied 440 So.2d 726 (La. 1983). The language of the prior constitution, "demoted, dismissed, or discriminated against," is merely a partial recitation of disciplinary actions. See CSR 12.1 et seq. The legislature in an attempt to provide a more encompassing list of actions entitled to the procedural protections of notice and hearing, and to do so with verbal economy, merely used the term "disciplinary actions."
[6] In 1972 the old constitution was amended to specifically eliminate the right to an evidentiary hearing. Compare La. Const, of 1921, art. XIV, § 15(I) with 1972 La. Acts, No. 778 (adopted as a constitutional amendment, November 7, 1972). The new constitution makes no provision for a hearing. Although it appears that the employee does not have an absolute right to an evidentiary hearing, we need not decide whether due process concerns require an evidentiary hearing.
[7] CSR 13.11(d) provides:

Where discrimination is alleged to be a basis for appeal, specific facts supporting the conclusion of discrimination must be alleged in detail. The specific facts required will vary depending on the nature of the appeal; however, the facts must be alleged in sufficient detail to enable the agency to prepare a defense. A conclusion of discrimination is not sufficient.