495 So.2d 958 (1986)
NEW ORLEANS ASSOCIATION OF FIREFIGHTERS LOCAL 632, et al.
v.
CIVIL SERVICE COMMISSION OF the CITY OF NEW ORLEANS, et al.
No. CA-6207.
Court of Appeal of Louisiana, Fourth Circuit.
September 19, 1986.
Rehearing Denied October 15, 1986.
Writ Denied January 9, 1987.
*959 Okla Jones, II, City Atty., Thomas W. Milliner, Deputy City Atty., Bruce E. Naccari, Asst. City Atty., New Orleans, for City of New Orleans, et al., defendants-appellants.
Ralph D. Dwyer, Jr., New Orleans, for Civil Service Com'n of City of New Orleans, et al., defendants-appellants.
Louis L. Robein, Jr., Gardner, Robein & Healey, Metairie, for New Orleans Firefighters Ass'n, Local 632, et al., plaintiffs-appellees.
Before GARRISON, CIACCIO and LOBRANO, JJ.
CIACCIO, Judge.
This is a suspensive appeal from a judgment declaring Rule XII of the Civil Service Commission of the City of New Orleans, (hereinafter referred to as the Commission) invalid as it applies to the August, 1986 reduction in force within the New Orleans Fire Department. The judgment also permanently enjoined the defendants from using the Civil Service job counseling and evaluation reports as part of the lay-off procedure, and ordered the individual plaintiffs reinstated to their former positions.

STATEMENT OF FACTS
The facts are accurately set forth in the brief of appellant, the City of New Orleans, and we substantially reiterate them herein:
Effective August 3, 1986, the New Orleans Fire Department laid off 181 Fire Recruits (Probationary Employees) and regular classified Firefighters implemented in connection with large scale lay-offs of City employees mandated by budget constraints. Superintendent of Fire, William McCrossen, had been ordered to reduce his budget by two and a quarter million dollars for fiscal year 1986. To accomplish the reduction, Superintendent McCrossen cut ten engine companies and laid off all fire recruits. This translated to lay-offs and demotions of 181 employees within the Fire Department. Superintendent McCrossen forwarded the number and classes of employees to be laid off to the Commission who in turn prepared the ordering of the lay-offs.
The lay-offs and demotions were conducted in accordance with Rule XII of the Commission which provides the order and ranking of probationary and classified employees for lay-offs and demotions within particular departments and agencies of the City of New Orleans. Section 4.1 thereof provides that probationary employees would be laid off first. In this instance, all Fire Recruits were laid off. The ordering within the ranks of classified Firefighters, Operators and *960 Captains for both lay-offs and demotions is based upon a system of Service Ratings, years of continuous service with the City (Seniority) and a series of tie-breaking steps. Rule XII, Section 5.
Plaintiffs contested the use of service ratings as a factor to be applied in determining the order of lay-offs and demotions within the classified ranks in the Fire Department. Service Ratings are annual employee appraisal forms completed by the supervisor most familiar with the employee's work during the rating period. Rule XI, Section 1.2.
Since 1978 the Commission mandated that a standardized Job Counseling and Evaluation Report (Service Rating) form be used by all departments of the City for evaluating classified employees. One form was to be used by all departments in order to provide a uniform service rating system and to avoid favoritism and discrimination if different departments used different forms. (Rule XI, Section 1.1.)[1]
The Service Rating form has fifteen factors to evaluate employee performance. These factors include such areas as job knowledge, use of equipment and materials, dependability, safety and cooperation. Firefighters and Operators are rated on Job Factors 1 through 8. Fire Captains are rated on Job Factors 1 through 15 (excluding 14). For each factor, there are five possible Service Ratings: "Outstanding", "Exceeds Requirements", "Competent", "Needs Improvement", and "Unsatisfactory". Each rating level for each Job Factor is described on the form itself.
Each service ranking for each Job Factor is assigned a numerical value (5, 4, 3 etc.) and each employee's Job Factors are added up and divided to obtain a score between 1 and 5. Under Rule XII the last three service ratings of each employee are averaged to yield an average score between 1 and 4 and the average score is placed in one of five service rating categories.
Once employees are placed into their respective categories, based on the three year average, they are then ranked within each group by date of total consecutive service with the City (Seniority). The lay-off procedure mandated by Rule XII is to start with the lowest Service Rating category with the person with the least seniority and move up within that particular category on the basis of seniority. Once that category is exhausted, then the person with the least seniority in the next highest category is laid off and so forth until the number of lay-offs required is reached.
The Superintendent designated the number of civil service employees within each job "classification to be demoted. Pursuant to Rule XII, a demoted captain will be restored to the position he held prior to becoming a captain (for example, fire apparatus operator). If the captain is demoted to operator, he goes to the top of the list of operators and, in effect, "bumps" the bottom operator to firefighter. In turn, the demoted operator will be the final person in the firefighter class to be laid off. Rule XII, Section 5.5.
Plaintiff Sanchez is a former fire captain who was demoted to fire apparatus operator. Plaintiffs Kastner and Haydin are former firefighters who have been laid off. Pursuant to the provisions of Rule XII, plaintiffs Kastner and Haydin have been placed on a preferred re-employment list, which represents the inverse ordering of the lay-off list. In other words, the last person who was laid off becomes the first to be rehired if and when vacancies become available in the future. Likewise, persons who have been demoted such as plaintiff Sanchez are placed on preferred re-employment list and will be restored to the higher position in inverse order if and when such positions become available. (Rule *961 XII, Section 6). However, plaintiff Sanchez continues to receive the same pay while demoted that he received in his former position as a fire captain.
The trial court rendered judgment declaring Rule XII of the Civil Service Commission "invalid as it applies to the August, 1986 reduction in force within the New Orleans Fire Department." The court permanently enjoined the use of Civil Service Job Counseling and Evaluation Reports in ranking persons within the Fire Department, in the implementation of Rule XII. The court also ordered the individual plaintiffs reinstated to their former positions.
Defendants filed a suspensive appeal. Plaintiffs answered the appeal. In their answer, plaintiffs request the creation of an alternative method for reduction of their work force, (i.e., the use of seniority in the classified service as the sole criteria); the reinstatement of all affected firefighters; and relief from the effects of lay-offs and demotions which were conducted without a pre-termination process.
We first discuss the issue of pre-termination rights. Due to our resolution of this case, we pretermit a discussion of the other issues raised in appellees answer to the appeal.

Pre-termination Process
In its answer to the appeal plaintiffs contend that the trial court erred in failing to address the issue of whether layoffs and demotions of firefighters, without a pre-termination proceeding, violated the due process clauses of the state and federal constitutions. U.S. Const.Amend. 5, 14; La. Const.Art. I Sec. 2.
The trial court found Rule XII invalid in its application to the plaintiffs and, therefore, it did not reach the issue of the constitutional soundness of the procedure utilized by the Department in carrying out the layoffs and demotions pursuant to the Rule.
Since we find that the trial court exceeded its authority in finding Rule XII invalid as it applied to the reduction in force of the New Orleans Fire Department, we address the issue of the constitutional validity of the procedure utilized by the Department in carrying out the layoffs and demotions pursuant to the Rule.
The record reflects that the plaintiffs were given notice of the impending official action ten days before the scheduled layoffs. Rule XII, Sec. 5.7, Rules of Civil Service Commission. The affected employees were not afforded a pre-deprivation hearing. A number of them have appealed their terminations to the Commission pursuant to Rule 4.1 of the Civil Service Rules, which affords an opportunity for a post-deprivation hearing.
The issue presented is whether the plaintiffs' rights to procedural due process, under the state and federal constitution, have been violated because of the failure of the Appointing Authority to provide them with an opportunity for a pre-deprivation hearing.
The plaintiffs contend that they were entitled to a hearing prior to the implementation of adverse employment action. They rely upon Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).
In the Loudermill case, supra, plaintiffs, Loudermill and Donnelly, were classified civil servants who were discharged for cause. They appealed their dismissals to the Civil Service Commission. The Commission upheld Loudermill's dismissal and reversed Donnelly's dismissal. Donnelly was reinstated but he was not afforded back pay. Neither litigant appealed to the district court. They thereafter filed suit in federal court challenging the constitutionality of the state statute which afforded them only post-deprivation rights of appeal and review. The plaintiffs argued that the state statute was unconstitutional on its face because it did not afford the discharged employees an opportunity to respond to the charges against them prior to their removal, thus depriving them of liberty and property without due process of law.
The Loudermill Court concluded that tenured public employees, who can only be discharged for cause, possess a property *962 right in continued employment. As such, the Court found that the employees could not be deprived of this right without due process of law. In deciding what process was due under the facts presented, the Court decided that the plaintiffs were entitled to oral or written notice of the charges, an explanation of the employer's evidence and an opportunity to present their side of the story. In Loudermill, the Court expressed the opinion that the plaintiffs' due process rights could be protected by a pre-termination opportunity to respond and the post-termination administrative procedures afforded by the state statute. In reaching this conclusion the Court considered the competing public and private interests that were at stake. Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, (1976). The Court placed great emphasis upon the fact that dismissals for cause often involve factual disputes and in this case the litigants had plausible arguments to make which might have prevented their discharge.
Defendants contend that Loudermill, supra is applicable only to disciplinary cases and that this is the conclusion reached by the Louisiana Supreme Court in Bell v. Department of Health and Human Resources, 483 So.2d 945 (La.1986). We disagree.
In Bell, supra, the Court found that a civil servant who was affected by a reallocation was not entitled to a pre-deprivation hearing. The Court reached this conclusion after considering two state constitutional provisions. The Court found that Louisiana Constitution, Article X Sec. 8 entitles a classified worker to pre-deprivation notice in writing and a post-deprivation hearing as a matter of right. The Court reasoned, however, that this procedure was not applicable to this case because reallocation was not a disciplinary sanction, since job performance was not an issue.
The Court also analyzed the plaintiffs' claim in light of the due process provision of Art. 1, Sec. 2 of the Louisiana Constitution. In this regard, utilizing the Mathews criteria, the Court reasoned that the Civil Service Rules satisfied the due process requirement of Louisiana Constitution Art. 1, Sec. 2 by providing a review of official actions by a neutral decisionmaker upon allegations of discrimination and/or a Rule violation. The Court concluded that any benefit that would be derived by a substitute procedure requiring both pre-reallocation notice and an opportunity to be heard would be outweighed by the burdens it would place on the system.
The Court in Bell, supra, therefore, did not limit Loudermill supra, solely to disciplinary cases. Rather, relying on Loudermill, the Court in Bell stated:
In addition to the notice provided in this article [i.e., La. Const. Art X Sec. 8 A] in certain situations, due process requires that there be a pre-deprivation hearing. Supra at 947, fn. 3.
Since the rights discussed in Loudermill, supra, are procedural due process rights, they are afforded protection in a wide variety of situations and not just in the case of disciplinary actions. That is, the predicate for requiring a governmental entity to comply with the rudiments of procedural due process is a determination that some constitutional interest is at stake. Stana v. School District of the City of Pittsburgh, 775 F.2d 122 (3rd Cir. 1985). In the case of civil servants the constitutional interest at stake is their property right of classified civil service status. Cleveland Board of Education v. Loudermill, supra; Bell v. Department of Health and Human Resources, supra.
Although we conclude that Loudermill is not restricted solely to cases of disciplinary actions, we nonetheless find that the plaintiffs' do not have a constitutional right to a pre-deprivation hearing in this case. A pre-deprivation hearing, as a matter of constitutional right rests upon the proposition that full relief cannot be obtained at a post-deprivation hearing. Mathews v. Eldridge, supra.
Contrary to the assertions of plaintiffs, we find that they are afforded an opportunity for a post-deprivation hearing by the *963 Rules of the Civil Service Commission. Rule 4.1 of the Civil Service Rules provides:
Regular employees in the classified service shall have the right to appeal to the Commission from dismissal, involuntary retirement, reduction in pay, demotion, suspension and fines. (Emphasis Supplied).
We construe the language of this rule as affording a classified employee the right of appeal to the Commission (i.e., post-deprivation hearing) in the case of "dismissal" or "demotions", be that from a disciplinary action or as the result of lay-off actions mandated by budgetary constraints. The Commission has recognized this appeal right and the record shows that 38 firemen, including plaintiff, Wayne Haydin, filed appeals on August 4, 1986. On August 6, 1986 these appeals were docketed for hearing at a later date. As such, this Rule provides an opportunity for a post-deprivation hearing at which the Commission may correct any action whereby an employee has been wrongfully deprived of his position. In such an event the employee may be reinstated with full back pay and benefits. This post-deprivation procedure (coupled with the pre-termination notice of Rule XII, Sec. 2.1) affords the aggrieved employees full relief, thus negating the necessity of a pre-deprivation hearing. In arriving at this conclusion we have weighed the governmental and private interests that are affected. Loudermill v. Cleveland Board of Education, supra, citing Mathews v. Eldridge, supra.
In Mathews, supra 424 U.S. at 903, 96 S.Ct. at 894, the United States Supreme Court set forth the three factors to be considered:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. (Emphasis Supplied)
In this case we have weighed those three considerations. First, the private interest which will be affected by the official action is the interest of each employee in either retaining his employment or retaining his previous level of earning capacity. Since the recipient whose benefits are terminated is awarded full back pay and benefits, if he ultimately prevails, his sole interest is in the uninterrupted receipt of this source of income pending a final administrative decision on his claim. This interest is the same whether the official action is disciplinary or budgetary.
Second, the risk of erroneous deprivation of this interest through the procedure used is much less than might possibly exist in a disciplinary context. That is, in a disciplinary context facts often play a major part in the dispute and can be a decisive factor in resolution of the situation.
In this case the determination of demotions and/or layoffs rests upon a carefully prescribed formula which weighs several factors, a number of which are objective. That is, the decision is based upon a system of service ratings, years of continuous service and a series of tie-breaking steps. Civil Service Rules, Rule XII. The service ratings utilized consist of those accumulated over a three year span and involve the consideration of eight different measures, (some objective) which are evaluated each year. The scores are totaled and the employees ranked. The subjective factor involved in evaluations is minimized by the addition of the factor of seniority to the formula. Thus, this system is more likely to be fair and more reliable than one which rests solely upon credibility and veracity.
Finally, we must evaluate the public interest, that is the fiscal and administrative burden that would be imposed in requiring pre-deprivation hearings in all the budgetarily mandated demotions and lay-off cases.
The cost resulting from the potentially large number of hearings and the expense of providing salaries to ineligible recipients *964 pending a decision would be substantial. This is not a case of a handful of affected employees. There are 181 persons laid off from their former positions with the Fire Department. This figure (in addition to several hundred in other departments) is unprecedented in the City's history and the expense of providing pre-deprivation hearings for these employees as well as providing salaries to ineligible recipients would greatly compound the City's budgetary deficit, in this worst of financial times. As stated in Mathews, supra at 909, 96 S.Ct. at 348 "the cost of protecting those whom the preliminary administrative process had identified as likely to be found undeserving may in the end come out of the pockets of the deserving."
Therefore, weighing the requisite factors announced in Mathews, supra, we conclude that the plaintiffs in this case are not entitled to pre-disposition hearings. The administrative remedies provided by the Department and Commission fully satisfy the procedural due process requirements of the state and federal constitutions. U.S. Const.Amend. 5, 14, La. Const.Art. 1, Sec. 2. The procedures afforded the claimants provide an effective process whereby they are notified of the impending action, they can assert their claims, actively participate in an evidentiary hearing and seek judicial review. Under the facts of this case, the due process rights of the claimants are adequately protected.

Validity of Rule XII
The trial court found that Civil Service Rule XII was reasonable. In this regard the Court made the following findings:
In concept, the system devised by the Civil Service Commission to accomplish the reduction in force was reasonable. Competence is certainly as valid a criterion as seniority in determining who should be laid off. The evaluation program designed in 1978 was also reasonable. The reporting form was carefully drawn by experts and the training offered by the Civil Service Department was adequate. [Reasons for Judgment]
These findings are entitled to great weight and will not be set aside on appeal unless clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The fundamental purpose of civil service laws and rules is to establish a merit system for selecting non-policy forming public employees on the basis of merit and to provide that they shall be discharged only for cause and not for political or religious reasons. New Orleans Association of Firefighters Local 632 v. Civil Service Commission of the City of New Orleans, 422 So.2d 402 (La., 1982). This merit system thereby promotes efficiency which is of public benefit. New Orleans Association of Firefighters Local 632 v. Civil Service Commission of the City of New Orleans, supra.
In recognizing the importance of the Civil Service Commission, the legislature elevated it to a constitutional status. La. Const.Art. X (1974). Sewerage and Water Board of New Orleans v. Civil Service Commission of the City of New Orleans, 492 So.2d 1255 (La.App. 4th Cir.1986). The Commission is vested with broad and general rule making authority and rules adopted by them have the effect of law. La. Const.Art. 10 § 10 A(1)(4). Sewerage and Water Board of New Orleans v. Civil Service Commission of the City of New Orleans, supra. When a Civil Service Rule and legislative act are in conflict, the rule will prevail. Smith v. Department of Health and Human Resources, 416 So.2d 94 (La.1982). If a rule is reasonable and not violative of basic constitutional rights, it must be recognized and given effect by the courts. Thoreson v. Department of State Civil Service, 433 So.2d 184 (La. App. 1st Cir.1983).
Plaintiffs Sanchez, Kastner and Haydin have been demoted or laid off as a result of the implementation of Rules XI and XII by the Department of Fire and the Department of Civil Service. They seek to be reinstated to their former positions. Firefighters Local 632 seeks identical relief for its affected members although the class action was abandoned prior to trial. Art. X *965 Sec. 8 of the Louisiana Constitution grants exclusive jurisdiction in such personnel matters, (i.e., demotion and dismissal) to the Civil Service Commission. Art. X, Sec. 12 of the Louisiana Constitution grants exclusive appellate jurisdiction for review of the decisions of the Commission or any question of law or fact to this Court.
The trial court questioned its subject matter jurisdiction before testimony began, and, after a verbal exception of no cause of action was urged by the Commission, the trial court held that it possessed jurisdiction on the constitutional issues, as the Commission does not have the authority to address a constitutional challenge to its own rules. See: Appeal of Brisset, 436 So.2d 654 (La.App. 1st Cir.1983), writ denied 441 So.2d 749 (La.1983).
Although plaintiffs have contended that the Commission does not have the constitutional authority to integrate service ratings with seniority, we find no merit in that argument. Prior to the adoption of the 1974 Constitution, Louisiana Revised Statute, Title 33 Section 2422 used the last three years service ratings as the only criteria for layoffs. Plaintiffs ask that seniority be the only determining factor in layoffs. The Commission, under its broad rule making authority and specific lay-off powers granted by Louisiana Constitution Art. X, Sec. 10, adopted Rule XII of the Commission which integrates in a fair and non-discriminatory fashion, the service rating criteria of the Commission's Rule XI with seniority. We find no constitutional infirmity in either rule. See Sewerage and Water Board of New Orleans v. Civil Service Commission of the City of New Orleans, 492 So.2d 1255 (La.App. 4th Cir. 1986).
During the two day trial of this matter plaintiffs offered their testimony and that of other firemen to the effect that fire department supervisors were untrained or ill trained in the art of completing the service rating form, that they confused the new form with the old one, that the form itself was inadequate to measure the performance of firefighters, and that most supervisors were unaware that service ratings would be used in connection with lay-offs. Plaintiffs also offered one expert in support of their claims.
The defendants offered testimony to show the great amount of expertise, time and money spent in devising the new rating system, described the training procedures that were carried out, introduced the training manuals into evidence and offered their expert, who possessed outstanding credentials, to support the reasonableness and merit of the reporting form and the procedures set up by the Commission to guarantee the form's validity.
The trial court, after hearing the testimony, failed to find that Rules XI and XII were unconstitutional. To the contrary it found the lay-off system devised by the Commission to be reasonable, the reporting form to be carefully drawn and the training offered by the Civil Service Department to be adequate. These findings are fully supported by the record.
However, in his reasons for judgment the trial judge made the following observations regarding the Fire Department's implementation of the evaluation process:
Entirely missing from the program however was organizational commitment, the sine qua non of a fair and effective evaluation process. The testimony established that within the Fire Department, from the ranking officers down, most did not take the evaluation process seriously. While the Department performed the mechanical aspects of the process well, it was woefully deficient in its concern for and comprehension of the substance of the program. The overwhelming weight of the testimony is that most supervisors were inadequately concerned with evaluations. The anecdotal testimony of the witnesses confirms the conclusion that this disdain for the evaluation process permeated the Department.
* * * * * *
(Reasons for Judgment)
*966 The record reflects that prior to a letter of July 17, 1986 plaintiffs made no formal complaint to the Commission to protest the alleged failure of the fire department supervisors to carry out the intent of Rule XI. The Commission has investigatory powers under Louisiana Constitution Art. X, Sec. 10, and it has the inherent power to enforce its rules throughout the classified service. Now that the alleged deficiencies have been called to the Commission's attention we must presume that the Commission will take the appropriate administrative actions to correct this situation. The Commission should be afforded the opportunity to demand compliance with the intent of Rule XI within the fire department and to take appropriate disciplinary action when necessary.
We have previously held that the Commission is mandated to adopt a uniform lay-off system affecting all classified employees. It cannot have one system for the fire department and a different one for the remainder of the City employees.
If the uniform system it adopted is constitutional, (i.e., not arbitrary, capricious or unreasonable) the allegedly improper application of that system as it impacts individual employees is a matter to be addressed on a case by case basis by appeal to the Commission. To the extent that an employee was treated unfairly, (i.e., discriminated against) because he was not the recipient of a fair and effective evaluation process, his remedy is by appeal to the Commission and, if unsuccessful, by appeal to this Court. La. Const.Art. 10 Sec(s) 8, 12. The Constitution does not grant jurisdiction to the district court to redress employee claims of unfair treatment absent constitutional grounds.
Although the findings of the trial judge regarding the manner in which the merit evaluation forms were handled by the Fire Department may be persuasive in connection with appeals before the Commission, having failed to find Rules XI and XII to be unconstitutional, the trial court was without authority to order the reinstatement of plaintiffs as this would be a usurpation of the appellate jurisdiction of the Commission. Further, without first finding that Rule XII was unconstitutional, the trial court was without authority to enjoin its implementation in connection with lay-offs within the Fire Department. The effect of the injunction is to grant an en globo award of reinstatement to all firefighters who have already filed appeals with the Commission and to bring about the lay-off or demotion of those firefighters who must be displaced by the reinstated ones. We hold that such powers are reserved to the Commission, subject to appellate review by this Court.
For the reasons assigned the judgment of the trial court is reversed and the injunction is vacated with each party to bear his respective costs.
REVERSED, INJUNCTION VACATED.
 PLAINTIFF'S EXHIBIT 1
 RULE XI
 SERVICE RATINGS
 (as adopted December 9, 1953, amended May 19, 1954, April 10, 1975, July 22, 1975,
 May 11, 1978, February 28, 1979, and June 9, 1983)
Section 1. ADMINISTRATION
1.1 A uniform service rating system for all organization units is established, which system
 shall include provisions for periodic rating of employees on the basis of performance.
 The Director shall prescribe the form on which service ratings are to be made and each
 organization unit shall use the form prescribed by the Director in accordance with
 these rules and the instructions given on the official form and its accompanying
 manual.
*967
1.2 The service rating period July 1, 1982-June 30, 1983 is extended by six months to
 December 31, 1983. As of January 1, 1984, and annually thereafter, the appointing
 authority of each organization unit shall have a service rating made of each regular
 (permanent) employee in that organization unit who has worked in the classified
 service during that rating period.
 However, if the employee has not worked for the current appointing authority for at
 least ninety (90) days during the rating period, the employee shall be rated by the
 appointing authority under whom the employee has most recently worked for at least
 ninety (90) days during the rating period. If the employee has not worked under any
 appointing authority for at least ninety (90) days, he shall be rated by the current
 appointing authority.
 Service ratings shall be made by the supervisor designated by the appointing authority
 as the individual most familar with the employee's work during the rating period.
 Such service ratings shall be prepared for all regular employees, including those
 currently serving in emergency, transient, provisional or probationary appointments.
 The service rating shall be discussed with the employee, and after such discussion, the
 employee shall sign the rating, but this act of signing shall be evidence only of the fact
 that the rating has been submitted to the employee and discussed with the employee.
 Any refusal to sign shall be so noted on the official rating form.
 A rating made by the supervisor and signed by the employee shall then be reviewed by
 the appointing authority or the designated agent. The appointing authority or
 designate shall sign the rating as presented or as corrected, and, when thus signed by
 the appointing authority or designate, the rating shall become effective as the official
 service rating of the employee for the period indicated thereon. Any modification by
 the appointing authority of the supervisor's rating of the employee shall be communicated
 to the employee and the supervisor.
1.3 The appointing authority shall submit the original copy of the completed service rating
 and a certified list of the employees who were rated to the Civil Service Department
 not later than April 1, 1984, and annually thereafter not later than April 1.
1.4 There shall be five possible service ratings, one of which shall be used in rating each
 employee. The service ratings are: "Outstanding", "Exceeds Requirements", "Competent",
 "Needs Improvement", and "Unsatisfactory".
1.5 An employee who is rated "Unsatisfactory" shall have a right of appeal to the
 appointing authority or to a service rating appellate board which the appointing
 authority may designate to hear such appeal. The employee must appeal in writing
 within thirty (30) days after receiving official notice of the "Unsatisfactory" rating,
 specifying what the rating should be and the reasons therefor. The appointing
 authority or appellate board, if an appellate board has been designated as herein
 provided, shall hear the appeal, have prepared an official record of the proceedings and
 render a written decision within thirty (30) days, sustaining or modifying the rating
 which has been appealed.
1.6 After a final written decision of the appointing authority has been rendered, an
 employee whose rating remains "Unsatisfactory" may appeal to the Director of
 Personnel for a further review of the "Unsatisfactory" service rating. The appeal to
 the Director of Personnel shall be based solely on the official record established at the
 hearing of the appeal before the appointing authority or the appellate board of the
 organization unit. An appeal to the Director of Personnel must be filed, in writing, by
 the employee within thirty (30) days of the effective date of the decision of the
 appointing authority or the appellate board of the organization unit. After review, a
 written notice of the final decision of the Director of Personnel shall be provided to the
 employee.
1.7 Once the "Unsatisfactory" rating has been determined to be final, the work performance
 of an employee who received the "Unsatisfactory" rating shall be reviewed by the
 appointing authority for a period of ninety (90) days. At the conclusion of this review
 period, the appointing authority must state in writing to the Director of Personnel
 whether or not the employee's work performance has improved. If, upon review, the
*968
 work performance has not improved, the appointing authority shall take appropriate
 disciplinary action under the provisions of Rule IX.
1.8 The Director may investigate the accuracy of reports of ratings under the system
 adopted, and may adjust the ratings to conform to the facts as ascertained.
(Sections 1.1-1.8 Amended June 9, 1983, effective June 9, 1983)
 PLAINTIFF'S EXHIBIT 2
 RULE XII
 LAYOFFS
 (adopted December 9, 1953, amended May 19, 1954, June 9, 1954, May 8, 1958, July 22,
 1975, November 8, 1979, September 11, 1980, November 12, 1981, October 26, 1982,
 March 13, 1986, May 22, 1986)
Section 1. ADMINISTRATION (amended March 13, 1986)
1.1 If it becomes necessary to reduce the working force in the classified service because of
 fiscal constraints or some other cause, the appointing authority of the organization
 unit affected must notify the Director of Personnel before a layoff of employees can
 be initiated. (amended March 13, 1986, effective March 13, 1986)
Section 2. DESIGNATION OF ORGANIZATION UNITS AFFECTED
2.1 At least forty-five (45) days prior to the effective date of a proposed reduction in the
 work force, the organization units to be affected must be designated and the Director
 of Personnel must be notified in writing of their selection. Upon receipt of this
 information, all personnel transactions throughout the service shall be reviewed for
 their effect on the forthcoming layoff and may be held in abeyance until the layoff
 process has been completed.
Section 3. UTILIZATION OF VACANT POSITIONS IN LAYOFFS (amended March 13, 1986)
3.1 Whenever a position held by a permanent employee is abolished, either as the result of
 a reduction in operating funds or from the termination of a particular program, the
 employee shall be reinstated to any vacant position in the same class throughout the
 classified service, provided the employee possesses the requisite qualifications and
 experience to perform the job. The provisions of section 4.3 of this Rule shall govern
 the filling of vacant positions once the layoff of personnel has been initiated,
 (amended March 13, 1986)
Section 4. SUCCESSION OF LAYOFFS (amended November 12, 1981, March 13, 1986)
4.1 After compliance with the previous sections of this Rule, the succession of layoff steps
 shall be implemented in accordance with the following sequence:
 (a) All employees in Emergency appointments in the organization unit affected, who do
 not have permanent status in another class, shall be removed in inverse order of
 length of continuous service.
 (b) All employees in Transient appointments in the organization unit affected, who do
 not have permanent status in another class, shall be removed next, in inverse order
 of length of continuous service.
 (c) All employees in Provisional appointments in the organization unit affected, who do
 not have permanent status in another class, shall be removed next, in inverse order
 of length of continuous service.
 (d) If a further reduction of classified personnel is necessary in the organization unit
 affected, the appointing authority of that organization unit shall designate the
 class(es) of work to be reduced and notify the Director of Personnel in writing of
 the class(es) selected. (amended November 12, 1981, effective December 1, 1981)
 (e) Upon receipt of this designation of class(es), all classified employees in the
 designated class(es) in every agency, board, commission, and department shall be
 ranked as a group, in accordance with the provisions of Sections 4 and 5 of this
 Rule. Upon completion of the ranking of all classified employees in the designated
 class(es) throughout the classified service, a service-wide reduction of personnel in
*969
 the designated class(es) shall commence. (amended November 12, 1981, effective
 December 1, 1981, amended March 13, 1986, effective March 13, 1986)
 (f) All employees in original entrance Probationary appointments in the designated
 class(es), who do not have permanent status in another class, shall be ranked in
 inverse order of length of continuous service and removed before any regular
 employee in the designated class(es). (amended November 12, 1981, effective
 December 1, 1981)
4.2 The service-wide reduction of personnel shall proceed in accordance with the layoff
 steps specified in this Rule until the number of employees laid off equals the reduction
 in the funding level for those abolished positions in the various designated organization
 units throughout the classified service. (amended March 13, 1986)
4.3 Upon completion by the Civil Service Department of the mechanics of the layoff steps,
 transfers shall be effected for those employees whose present positions have been
 abolished, but who have a higher rank on the service-wide layoff list than other
 employees in organization units throughout the classified service. The opportunity for
 selecting positions scheduled to become available when the layoff of personnel is
 actually implemented shall be given to individuals according to their rank on the layoff
 list in the manner deemed most practicable by the Director of Personnel. However, no
 appointing authority shall be required under the provisions of this Rule to accept any
 employee previously dismissed from that agency. (amended March 13, 1986)
4.4 Employees in the designated class(es), who have completed their probationary period
 and have attained permanent status but who have not received a service rating, shall be
 ranked in inverse order of length of continuous service and shall follow original
 entrance probationary employees in the layoff succession.
4.5 Any regular employee who, in accordance with the provisions or Rule VIII, Sec. 6.1 has
 been granted a leave of absence to accept a position in the unclassified service of the
 city, shall be given an annual service rating by the appropriate appointing authority in
 the unclassified service, pursuant to the requirements of Rule XI, Sec. 1.2. Should a
 regular employee on such leave or other regular employee(s) who are eligible to be
 rated fail to receive a service rating, they will be ranked in any layoff situation in
 inverse order of length of continuous service in the classified service and will be
 inserted in the ranking sequence between the groups rated as Competent and Exceeds
 Requirements. (adopted and effective March 13, 1986)
Section 5. SEQUENCE OF RANKING FACTORS FOR REGULAR EMPLOYEES
 (amended March 13, 1986, effective March 13, 1986, amended May 22, 1986, effective
 May 22, 1986)
5.1 Layoffs are determined by ranking in one of five categories, with Unsatisfactory being
 the first category affected, followed by Needs Improvement, Competent, Exceeds
 Requirements and Outstanding. (adopted May 22, 1986, effective May 22, 1986)
 In order to determine the ranking of regular employees for an anticipated layoff, each
 employee's service ratings for no more than the past three years of consecutive service
 are averaged; the resultant scores are ranked in ascending order and grouped as
 follows:
 (a) UNSATISFACTORY service rating scores falling between 1.0 and 1.5 are considered
 to be the lowest average service rating.
 (b) NEEDS IMPROVEMENT service rating scores falling between 1.6 and 2.5 are the
 next ranking group
 (c) COMPETENT service rating scores falling between 2.6 and 3.5 are the next
 ranking group.
 (d) EXCEEDS REQUIREMENTS service rating scores falling between 3.6 and 4.5 are
 the next ranking group.
 (e) OUTSTANDING service rating scores falling between 4.6 and 5.0 are the highest
 ranking group.
 Service ratings received for rating periods which occurred prior to any break in
 continuous service shall not be included in the computation of the employee's average
 rating. (amended March 13, 1986, effective March 13, 1986)
*970
5.2 In order to determine the respective ranking of all employees within each rating
 category mentioned above, those employees within the respective service rating group
 shall be arranged in ascending order, in accordance with the employee's consecutive
 service date in the classified service. The employee with the least amount of continuous
 service shall be ranked as the first within that service rating category to be laid off,
 followed by others having progressively longer periods of continuous service.
 (amended March 13, 1986, effective March 13, 1986, amended May 22, 1986, effective
 May 22, 1986)
5.3 If two or more individuals in a class designated for layoff are in the same service rating
 category and have the same consecutive service date in the classified service, the
 following tie-breaking steps shall be employed only to rank the individuals tied:
 (amended March 13, 1986, effective March 13, 1986, amended May 22, 1986, effective
 May 22, 1986)
 (a) An employee who has been restored to a class having a lower salary range shall be
 given preference in the breaking of a tie. If the employees are still tied, then
 (b) An employee who is entitled to Veteran's Preference shall be laid off after the
 employee who does not have a qualified veteran's preference in accordance with the
 provisions of Rule XIII. If the employees are still tied, then
 (c) An employee who has retired from a classified position and is eligible for a pension
 from that system is laid off ahead of the other(s), then
 (d) An employee's prior service with the City shall then be considered, giving preference
 to the employee with prior service; or, if both employees have prior service,
 then the employee with the longest prior service with the City receives preference;
 if employees are still tied, then
 (e) An employee who is a resident of Orleans Parish shall be given preference over a
 nonresident, then
 (f) If the employees are still tied after completing the previous tie-breaking steps, then
 the tie shall be broken through the drawing of lots in a manner deemed most
 practicable by the Director of Personnel.
Sections 5.3a, 5.3d, 5.3e, adopted May 22, 1986, effective May 22, 1986.
Sections 5.3b, 5.3c, amended May 22, 1986, effective May 22, 1986.
5.4 After the sequence of layoff steps has been completed and an ordered list of employees
 in the designated class has been compiled, any regular employee scheduled for layoff,
 who has permanent status in a class having an equal or lower salary range, regardless
 of the organization unit, shall be restored to that class. All employees in that class
 shall then be ranked in accordance with the provisions of this Rule if the need for
 further reduction exists. (amended May 22, 1986, effective May 22, 1986)
5.5 If a regular employee, after having attained permanent status in a higher class, is
 restored to a lower class in accordance with the provisions of Section 5.4, that employee
 is ranked as the final person to be laid off in that lower class when the ranking of
 incumbents in the lower class has been completed.
5.6 If an appointing authority feels that a certain employee is absolutely essential to the
 effecient and effective operation of the organization unit because of special skills or
 abilities, and the appointing authority wishes to retain the employee despite his or her
 ranking on the layoff list, a written request must be submitted to the Director of
 Personnel requesting permission to do so. This request must set forth, in detail, the
 specific skills and abilities possessed by the individual and the reasons why this
 particular employee is so essential to the efficient and effective operation of the
 organization unit. Only if the Director of Personnel approves the request may the
 employee be retained despite his or her ranking on the layoff list.
5.7 All employees shall be notified in writing by their appointing authority of their
 scheduled layoff at least ten (10) calendar days prior to the effective date of the layoff,
 (amended May 22, 1986, effective May 22, 1986)
5.8 Those employees who are scheduled to be laid off must be paid for all terminal leave
 upon separation from the service.
*971
Section 6. PREFERRED REEMPLOYMENT BENEFITS
 (amended October 26, 1982, March 13, 1986)
6.1 The name of every regular or probationary employee who is laid off from the classified
 service shall be placed on a preferred reemployment register for the classification of
 work the employee occupied at the time of separation from the service. If, during a
 layoff process the employee was also reduced from a higher classification and restored
 to a lower classification in accordance with the provisions of this Rule, the employee's
 name shall also be placed on the preferred reemployment list for each classification
 from which he or she was thus removed. The expiration date of each list will be
 calculated from the date removal from that classification by demotion or layoff.
 (amended March 13, 1986)
6.2 Separate preferred reemployment lists shall be established, for a period not to exceed
 two (2) years from the date of the layoff, for all regular and probationary employees
 who have been laid off from the classified service.
6.3 The preferred reemployment list for a particular classification of work containing the
 names of regular employees who were laid off shall be certified ahead of the preferred
 reemployment list containing the names of probationary employees who were laid off in
 the same classification of work.
6.4 The names of regular and probationary employees who have been laid off from the
 classified service shall be ranked on the appropriate preferred reemployment register in
 inverse order from the layoff list; that is, the name of the last person laid off will be
 listed as the first to be reemployed.
6.5 All employees who have been placed on a preferred reemployment list as a result of a
 layoff shall be considered for reemployment in any vacant position in the classification
 in which the employee has reemployment rights or in any other class for which the
 Director has deemed that list to be appropriate. Once a preferred reemployment list
 resulting from a layoff has been established, and until the expiration of that list, said
 list pre-empts all other methods of filling vacancies in that classification and in any
 other classification for which the Director has deemed that list to be appropriate.
 However, promotions in an established career series (for which experience at the next
 lowest level is the principal qualification) are specifically exempted from this requirement.
 Any agency, board, commission or department filling a vacancy from a preferred
 reemployment list resulting from a layoff shall offer the position to one of the three
 highest ranking eligibles willing to accept employment. However, in any case where
 the highest ranking eligible was laid off from the agency, board, commission or
 department having the vacancy, that individual shall be offered the position before any
 of the other eligibles may be considered. (amended October 26, 1982, effective October
 26, 1982, amended March 13, 1986, effective March 13, 1986)
6.6 A former employee on a preferred reemployment list resulting from a layoff, who
 accepts an offer of reemployment within two (2) years from the date of layoff, shall be
 considered as having had no break in service for longevity pay increases for leave
 accrual purposes. (amended March 13, 1986, effective March 13, 1986)
6.7 A former employee on a preferred reemployment list resulting from a layoff, who
 declines or fails to respond to a total of three (3) offers of reemployment, shall be
 removed from the preferred reemployment list and will have no further preferred
 reemployment rights. In addition, said former employee forfeits the benefits provided
 by Section 6.6 of this Rule.
*972 
*973 
*974 
*975
TO BE FILLED OUT BY SUPERVISOR Yes No I have shown this evaluation to the employee being rated.
This form was done by me personally. [] [] I have discussed this evaluation with the employee.
______________________________________Date______ _______ How many minutes did you spend with the employee showing and discussing this evaluation?
Supervisor's Signature
AREAS OF STRENGTH
AREAS FOR IMPROVEMENT
____________________________________________________________________________________________________________________________________________________________________
TO BE FILLED OUT BY EMPLOYEE
You are entitled to be counseled and rated by your supervisor at least once a year. Your supervisor is required to discuss with you what is marked on this form.
I have read this evaluation or had it read to me.
 Yes No
 [] [] My supervisor discussed this evaluation with me.
_______________________________________Date______ _______ How many minutes did you Supervisor spend with you showing and discussing this evaluation?
Employee's Signature
Employee's Comments
_______________________________________________________________________________________________________________________________________________________________________
TO BE FILLED OUT BY REVIEWER (APPOINTING AUTHORITY OR REPRESENTATIVE)
I have reviewed this form
 Yes No
 [] [] I agree with the rating by the Supervisor.
_______________________________________Date______If answer is "No", state which factors were changed and the reasons why in comments below. Be sure to initial your
 changes on the preceding pages.
Reviewer's Signature
Reviewer's Comments Notify the employee and the immediate supervisor of any changes and/or comments that were made.
___________________________________________________________________________________________________________________________________________________________________________
NOTES
[1] Copies of Rules XI and XII, and of the job Counseling and Evaluation Report are annexed to this opinion.